GREENSBORO BANK AND TRUST COMPANY, Guardian, v. G. M. SCOTT.

(Filed 8 November, 1922.)

**1. Contracts—Promise—Consideration—Abstinence from Drink.**

An offer from an uncle to his nephew that if the latter would abstain from drink for a period of five years, and devote his entire time and attention to the former's business, he would pay him $10,000, is for a sufficient consideration to support the promise upon the fulfillment of the obligation assumed by the nephew, and enforceable, it appearing that the parties were then living together in a relationship nearly approaching that of parent and child; and the nephew was an efficient manager of his uncle's mercantile business, and his sobriety, therefore, of monetary value to him.

**2. Same—Trusts—Statute of Frauds.**

Where the promisee has fulfilled his obligation, extending over a period of five years, made upon a valid and enforceable agreement of the promisor to pay him $10,000; and the promisor just before the expiration of the period has agreed by parol with the promisee that the consideration should be changed from the sum stated to his purchase for the promisee of a home of the latter's selection, which was accordingly done, but title was taken by the promisor in his own name under the parol trust in favor of the promisee, and the promisor continues to live there with the promisee and to pay the taxes on the house to the time of his death without making the deed as agreed upon, the promisee may in equity enforce the conveyance of the home against the heirs at law of the deceased promisor upon the principle of a parol trust, it being, in effect, the purchase of the home with the money belonging to the promisee, and which was due him upon the fulfillment of the original agreement; and the principle relating to the enforcement of a parol agreement affecting interests in land under the statute of frauds does not apply.

CLARK, C. J., dissenting.

APPEAL by plaintiff from *Connor, J.,* at the May Term, 1922, of
·CUMBERLAND.

This was a special proceeding, commenced before the clerk of the
Superior Court of Cumberland County, in which the Greensboro Bank
·and Trust Company, as guardian for certain minor heirs of one C. L.
Bevill, claimed an undivided one-sixth interest in a lot of land in the
·city of Fayetteville, the remaining five-sixth being owned by the defend-
ant, and asked for a sale for partition. The defendant denied that the
minor children had any interest in the lot, and claimed that he was the
real and sole owner of the same, under parol trust with C. L. Bevill.

The testimony tended to show that C. L. Bevill died in October, 1920,
intestate, and without lineal descendants. He left surviving him six
brothers and sisters, or the children of such. The wards of the plaintiff
·are the minor children of one R. A. Bevill, a brother of the deceased,
·and the defendant is a son of a sister who is still living.

For many years C. L. Bevill lived in Fayetteville, and did a large
wholesale and retail business in buying and selling horses and mules.
His business was very successful, and he left a large estate. For many
years the defendant handled the financial transactions of the business,
·as confidential clerk, bookkeeper, and general office man, at which he
was very efficient, and his efforts materially aided in the building up of
the business. The relationship between the defendant and his uncle was
practically that of parent and child. Scott was married in July, 1910,
·and both before and after his marriage he had been drinking to excess.
Influenced by his interest in the welfare of said Scott, and realizing
his dependence upon him for the continued successful operation of his
business, Bevill proposed to his nephew that if he would wholly abstain
from the use of intoxicating liquors and devote his entire time and
attention to his business for a period of five years, he would pay him
the sum of $10,000. Scott accepted this proposition, and from the date
of said contract and agreement until the expiration of said period of
five years, wholly abstained from the use of intoxicating liquors and
devoted his entire time and attention to the performance of his duties as
an employee of the said C. L. Bevill, and in all respects fully complied
with his part of the contract, which resulted in great benefit to his
employer, financially and otherwise.

Some time during the year 1912, C. L. Bevill, having observed that
the defendant was fully and faithfully complying with his agreement
and contract, as aforesaid, proposed to the said Scott that instead of
paying him the sum of $10,000 in cash at the expiration of the five-year
period, he would immediately purchase for him the best home he could
find in the city of Fayetteville, to be selected by himself and his wife.
This offer was accepted by Scott, and soon thereafter he notified Bevill

that he and his wife had selected the home then owned by T. M. Green on Hay Street in said city. Bevill thereupon opened negotiations with Green for the purchase of said home, informing him that he desired to purchase same for G. M. Scott. Bevill paid Green $8,500 for the house and instructed Green to make the deed to him, declaring at the time that he would convey same to Scott after the expiration of the five-year period.

T. M. Green, pursuant to instructions from C. L. Bevill, delivered possession of the house and lot to the defendant G. M. Scott, and who has been in possession of same continuously since the execution of the deed on 4 December, 1912. The defendant continued in the employment of C. L. Bevill until his death, and the said Bevill often, in conversation with friends and associates, referred to the house and lot in question as the home of G. M. Scott. Bevill lived with Scott, occupying a room in the said house, and paying a stipulated sum per month to Mrs. Scott for the use of same and for his board.

Although G. M. Scott had fully performed his part of the contract and agreement, as aforesaid, C. L. Bevill did not convey said house and lot to the defendant at the expiration of the period of five years, nor did he convey the same thereafter, at any time prior to his death; he having died suddenly while on a purchasing trip at Saint Louis, Mo.

Since the death of C. L. Bevill, all of his heirs at law, who are above the age of twenty-one, in deference to the known wishes of the deceased, have executed a deed conveying to the defendant, without further consideration, all their right, title, and interest in and to said house and lot, the same being an undivided five-sixths interest.

By consent, the court heard the evidence and found the facts, as above stated, and held that C. L. Bevill took title to the property in trust for Scott, and that his heirs were charged with this trust, and ordered that the guardian of the minor children convey the remaining one-sixth interest to the defendant. Petitioner appealed.

*Rose & Rose and R. D. Douglas for plaintiff.*
*Oates & Herring for defendant.*

STACY, J., after stating the case: The promise and offer of C. L. Bevill, under the facts of the instant case, to pay his nephew the sum of $10,000, if he would wholly abstain from the use of intoxicating liquors and devote his entire time and attention to his business for a period of five years, accepted and carried out, as it was, by the defendant, constituted a valid and enforceable contract. *Homer v. Sidway,* 124 N. Y., 538; 12 L. R. A., 463; Clark on Contracts (2 ed.), 114. In *Talbott v. Stemmon's Executor,* 89 Ky., 222; 5 L. R. A., 856, it was held: "The

BANK *v.* SCOTT.

abandonment of the use of tobacco by one party during the life of another is a sufficient consideration for a promise by the latter to pay the former an agreed sum of money." See, also, Anson's Law of Contract, p. 100. Abstinence from the use of intoxicating liquors was held to furnish a good consideration for a promissory note in *Lindell v. Rokes,* 60 Mo., 249. In the case at bar there was evidence to the effect that Scott's soberness and abstinence from the use of liquor in any form was worth to Bevill, in his business, the sum of $10,000 a year.

It will be observed that Bevill also profited to the extent of $1,500 and more by the change subsequently made in the contract. The single point presented for our consideration is whether a valid parol trust was created when Bevill, in lieu of paying the sum of $10,000 at the expiration of five years, agreed to purchase and to hold for Scott the best home in the city of Fayetteville, the same to be selected by the defendant and his wife. The facts are not in dispute. The change in the contract was agreed to by both parties. The plaintiff contends, however, that the contract, relating as it does to real estate, cannot be enforced, because, and only because, it is not in writing. Defendant counters by saying that his equity does not rest upon the idea of the specific performance of an oral agreement, but rather upon the idea of enforcing the execution of a trust; the relation of the parties being that of trustee and *cestui que trust. Cloninger v. Summit,* 55 N. C., 513. What actually took place was the full equivalent of, and really amounted to, a purchase of the property by Bevill with Scott's money, for Scott agreed to release Bevill from the payment of the sum of $10,000, and upon this promise, Bevill purchased the house and lot and took title in his own name. "It is not necessary that the consideration, which moves from the *cestui que trust,* should be *money;* it may consist of anything of value; and a trust will be decreed in favor of him who is the source of the consideration, whether it be lands, goods, money, securities, or credit." Bispham's Equity (9 ed.), p. 151; *Blodgett v. Hildreth,* 103 Mass., 484.

In application of this principle, the language of *Pearson, J.,* in *Hargrave v. King,* 40 N. C., 436, would seem to be quite pertinent and entirely appropriate here: "It is well settled that if one agrees, by parol, to buy land for another, and he does buy the land and pay for it with the money of his principal, but takes the deed in his own name, equity will enforce the agreement, hold him to be a trustee, and compel him to make title to the principal; for the statute which requires all contracts 'to sell or convey land' to be in writing has no application."

We think the judgment in favor of the present defendant is fully supported by the decisions of this Court in *Lefkowitz v. Silver,* 182 N. C., 339; *Ballard v. Boyette,* 171 N. C., 24; *Lutz v. Hoyle,* 167 N. C., 632; *Brogden v. Gibson,* 165 N. C., 16; *Anderson v. Harrington,* 163

N. C., 140; *Avery v. Stewart,* 136 N. C., 426; *Sykes v. Boone,* 132 N. C., 199, and *Wood v. Cherry,* 73 N. C., 110.

It would seem to be unnecessary, and, indeed, a work of supererogation, to repeat here what has been said in these cases. There is no error appearing on the record, and this will be certified to the Superior Court.

Affirmed.

CLARK, C. J., dissenting: The cases where the abandonment of the use of tobacco or abstinence from intoxicating liquors was held to furnish a good consideration for a promissory note can have no application here, for this is an alleged oral promise to convey realty, which, under the statute of frauds, is void, and therefore unenforceable.

Nor is the principle stated by *Pearson, J.,* in *Hargrave v. King,* 40 N. C., 436, pertinent or appropriate, for there he said that "If one agrees, by parol, to buy land for another, and he does buy the land and pays for it with the money of his principal, but takes the deed in his own name, equity will enforce the agreement, hold him to be a trustee, and compel him to make title to the principal; for the statute which requires all contracts 'to sell or convey land' to be in writing has no application." In this case nothing remotely resembling this took place. The deceased, C. L. Bevill, had no money whatever of D. M. Scott in his possession, and, of course, could not buy the land with Scott's money, and there could be no trust raised in this way, for if there was in fact any promise made to buy the house and convey the land, it was verbal and invalid under our statute, which the Legislature has not seen fit to revoke.

The land was bought by Bevill with his own money, and if he had made a verbal promise, as claimed, to buy the house with his own money and convey it to Scott, this was simply a parol contract to convey land. It is unnecessary to discuss whether such promise was upon a good consideration or not, for the purchase was not made with Scott's money, and any oral agreement to buy the house and convey it to Scott was simply invalid under the law of the land. None of the cases cited are authority which authorizes the courts to compel a conveyance of the property to Scott.

The fact that Scott lived in the house with Bevill after he bought it does not strengthen the contention that Bevill intended to give it to him. The point is that such intention was not evidenced by any writing, and cannot be enforced either in equity or at law.

Besides, when Bevill bought the land, which he did entirely with his own money, there is no evidence that Scott, then or at any other time, requested the deed to be made to him, and again, although Scott lived in the house with Bevill, the property was listed from the time of the

purchase in 1912 to Bevill's death in October, 1920, for taxes in the name of C. L. Bevill, and each year Scott paid those taxes by checks signed by Bevill. The five-year period of the required sobriety, alleged as the sole consideration, expired in 1916, four years before Bevill's death, and no demand was ever made by Scott for a conveyance. The fact that the other heirs of Bevill, who were of age, subsequently conveyed to Scott is not binding upon these infants who appeared by their guardian. They were not charged with any trust by the above transaction by virtue of which the court could decree that the guardian of the minor children should convey their undivided one-sixth interest to Scott.

There is no principle of law better settled than that parol evidence is inadmissible to prove the terms of a verbal agreement to convey land or any interest therein. There is nothing in the facts here to show any equity authorizing the court to decree that there was a trust in favor of Scott when there was no payment of any money of Scott by Bevill in the purchase of the land. Even if there was an oral agreement, under which, as Scott claims, Bevill became his debtor, that did not authorize the enforcement of a verbal contract to convey land.

The authorities are so uniform that it could be said with entire accuracy and confidence that there is no case in the books which authorized the enforcement of a decree compelling the minor heirs of Bevill to convey their interest to Scott. *No case anywhere heretofore has held that if one happens to be indebted to another he can contract to convey real estate to him verbally, without any writing.* Whether Bevill was or was not indebted to Scott by an oral agreement that he would give him a house if he remained sober, this was not a trust, but in any and every aspect was purely and simply "a verbal contract to convey."

The fact that Bevill lived in the house from his purchase in 1912 till his death in 1920; that the land was listed in his name for taxation, and that the taxes were paid through Scott by checks signed by Bevill; that the alleged five years sobriety which was the alleged consideration of the promise to convey to the defendant a house and lot expired in 1916; that Bevill survived the expiration of the five years for four years, and Scott made no demand for a conveyance of the house in all these 8 years time was evidence which should have been submitted to a jury, even if this had been an action at law upon an alleged valid agreement to convey, and even if it had been a valid and enforceable contract. The agreement being denied, only a jury, and not a judge, could pass on the fact.

The statute of 29 Charles II. provides: "All contracts to sell or convey any lands, tenements, or hereditaments, or any interest in or concerning them, . . . shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the par-

ties to be charged therewith, or by some other person by him thereto lawfully authorized," is still in full force and effect in this State. C. S., 988. Our Legislature has retained it, thus approving the wisdom of this age-long rule, and as this Court has recently said, we cannot change the law.