CLARK, C. J., dissenting. *Page 313 
This was a special proceeding, commenced before the clerk of the Superior Court of Cumberland County, in which the Greensboro Bank and Trust Company, as guardian for certain minor heirs of one C. L. Bevill, claimed an undivided one-sixth interest in a lot of land in the city of Fayetteville, the remaining five-sixth being owned by the defendant, and asked for a sale for partition. The defendant denied that the minor children had any interest in the lot, and claimed that he was the real and sole owner of the same, under parol trust with C. L. Bevill.
The testimony tended to show that C. L. Bevill died in October, 1920, intestate, and without lineal descendants. He left surviving him six brothers and sisters, or the children of such. The wards of the plaintiff are the minor children of one R. A. Bevill, a brother of the deceased, and the defendant is a son of a sister who is still living.
For many years C. L. Bevill lived in Fayetteville, and did a large wholesale and retail business in buying and selling horses and mules. His business was very successful, and he left a large estate. For many years the defendant handled the financial transactions of the business, as confidential clerk, bookkeeper, and general office man, at which he was very efficient, and his efforts materially aided in the building up of the business. The relationship between the defendant and his uncle was practically that of parent and child. Scott was married in July, 1910, and both before and after his marriage he had been drinking to excess. Influenced by his interest in the welfare of said Scott, and realizing his dependence upon him for the continued successful operation of his business, Bevill proposed to his nephew that if he would wholly abstain from the use of intoxicating liquors and devote his entire time and attention to his business for a period of five years, he would pay him the sum of $10,000. Scott accepted this proposition, and from the date of said contract and agreement until the expiration of said period of five years, wholly abstained from the use of intoxicating liquors and devoted his entire time and attention to the performance of his duties as an employee of the said C. L. Bevill, and in all respects fully complied with his part of the contract, which resulted in great benefit to his employer, financially and otherwise.
Some time during the year 1912, C. L. Bevill, having observed that the defendant was fully and faithfully complying with his agreement and contract, as aforesaid, proposed to the said Scott that instead of paying him the sum of $10,000 in cash at the expiration of the five-year period, he would immediately purchase for him the best home he could find in the city of Fayetteville, to be selected by himself and his wife. This offer was accepted by Scott, and soon thereafter he notified Bevill *Page 314 
that he and his wife had selected the home then owned by T. M. Green on Hay Street in said city. Bevill thereupon opened negotiations with Green for the purchase of said home, informing him that he desired to purchase same for G. M. Scott. Bevill paid Green $8,500 for the house and instructed Green to make the deed to him, declaring at the time that he would convey same to Scott after the expiration of the five-year period.
T. M. Green, pursuant to instructions from C. L. Bevill, delivered possession of the house and lot to the defendant G. M. Scott, and who has been in possession of same continuously since the execution of the deed on 4 December, 1912. The defendant continued in the employment of C. L. Bevill until his death, and the said Bevill often, in conversation with friends and associates, referred to the house and lot in question as the home of G. M. Scott. Bevill lived with Scott, occupying a room in the said house, and paying a stipulated sum per month to Mrs. Scott for the use of same and for his board.
Although G. M. Scott had fully performed his part of the contract and agreement, as aforesaid, C. L. Bevill did not convey said house and lot to the defendant at the expiration of the period of five years, nor did he convey the same thereafter, at any time prior to his death; he having died suddenly while on a purchasing trip at Saint Louis, Mo.
Since the death of C. L. Bevill, all of his heirs at law, who are above the age of twenty-one, in deference to the known wishes of the deceased, have executed a deed conveying to the defendant, without further consideration, all their right, title, and interest in and to said house and lot, the same being an undivided five-sixths interest.
By consent, the court heard the evidence and found the facts, as above stated, and held that C. L. Bevill took title to the property in trust for Scott, and that his heirs were charged with this trust, and ordered that the guardian of the minor children convey the remaining one-sixth interest to the defendant. Petitioner appealed.
After stating the case: The promise and offer of C. L. Bevill, under the facts of the instant case, to pay his nephew the sum of $10,000, if he would wholly abstain from the use of intoxicating liquors and devote his entire time and attention to his business for a period of five years, accepted and carried out, as it was, by the defendant, constituted a valid and enforceable contract. Homer v. Sidway, 124 N.Y. 538; 12 L.R.A., 463; Clark on Contracts (2 ed.), 114. In Talbott v. Stemmon'sExecutor, 89 Ky. 222; 5 L.R.A., 856, it was held: "The *Page 315 
abandonment of the use of tobacco by one party during the life of another is a sufficient consideration for a promise by the latter to pay the former an agreed sum of money." See, also, Anson's Law of Contract, p. 100. Abstinence from the use of intoxicating liquors was held to furnish a good consideration for a promissory note in Lindell v. Rokes, 60 Mo., 249. In the case at bar there was evidence to the effect that Scott's soberness and abstinence from the use of liquor in any form was worth to Bevill, in his business, the sum of $10,000 a year.
It will be observed that Bevill also profited to the extent of $1,500 and more by the change subsequently made in the contract. The single point presented for our consideration is whether a valid parol trust was created when Bevill, in lieu of paying the sum of $10,000 at the expiration of five years, agreed to purchase and to hold for Scott the best home in the city of Fayetteville, the same to be selected by the defendant and his wife. The facts are not in dispute. The change in the contract was agreed to by both parties. The plaintiff contends, however, that the contract, relating as it does to real estate, cannot be enforced, because, and only because, it is not in writing. Defendant counters by saying that his equity does not rest upon the idea of the specific performance of an oral agreement, but rather upon the idea of enforcing the execution of a trust; the relation of the parties being that of trustee and cestui que trust. Cloninger v. Summit, 55 N.C. 513. What actually took place was the full equivalent of, and really amounted to, a purchase of the property by Bevill with Scott's money, for Scott agreed to release Bevill from the payment of the sum of $10,000, and upon this promise, Bevill purchased the house and lot and took title in his own name. "It is not necessary that the consideration, which moves from the cestui que trust, should be money; it may consist of anything of value; and a trust will be decreed in favor of him who is the source of the consideration, whether it be lands, goods, money, securities, or credit." Bispham's Equity (9 ed.), p. 151; Blodgett v. Hildreth,103 Mass. 484.
In application of this principle, the language of Pearson, J., inHargrave v. King, 40 N.C. 436, would seem to be quite pertinent and entirely appropriate here: "It is well settled that if one agrees, by parol, to buy land for another, and he does buy the land and pay for it with the money of his principal, but takes the deed in this own name, equity will enforce the agreement, hold him to be a trustee, and compel him to make title to the principal; for the statute which requires all contracts `to sell or convey land' to be in writing has no application."
We think the judgment in favor of the present defendant is fully supported by the decisions of this Court in Lefkowitz v. Silver,182 N.C. 339; Ballard v. Boyette, 171 N.C. 24; Lutz v. Hoyle, 167 N.C. 632;Brogden v. Gibson, 165 N.C. 16; Anderson v. Harrington, *Page 316 163 N.C. 140; Avery v. Stewart, 136 N.C. 426; Sykes v. Boone, 132 N.C. 199, and Wood v. Cherry, 73 N.C. 110.
It would seem to be unnecessary, and, indeed, a work of supererogation, to repeat here what has been said in these cases. There is no error appearing on the record, and this will be certified to the Superior Court.
Affirmed.