SHERMAN A. BINGHAM v. DAVID A. LEE, DEXTER ALLEN LEE AND WIFE, BERTTIE W. LEE.

(Filed 14 January, 1966.)

1. **Trusts § 13—**

    A resulting trust arises in favor of a person furnishing a part of the purchase price for land for which title is placed in another under a prior express agreement that such other should hold the property for the benefit of those furnishing the purchase price, but in order to establish such trust plaintiff must prove that the consideration paid by him was actually used in the purchase of the property.

2. **Trusts § 19—**

    Evidence that plaintiff and one defendant made an agreement to purchase property as a partnership, that plaintiff gave this defendant money to be used as a down payment, but the evidence is to the effect that the second defendant took title to the property and furnished the down pay-

ment, without any evidence that the first defendant turned over to the second defendant the money furnished by plaintiff, *held* insufficient to establish a resulting trust in plaintiff's favor.

**3. Pleadings § 28; Trial § 26—**

Where plaintiff's evidence is insufficient to establish the cause of action alleged in the complaint, nonsuit is proper.

APPEAL by defendants from *Crissman, J.,* April 26, 1965 Civil Session of FORSYTH.

Civil action to establish a resulting trust.

Plaintiff's allegations, summarized except when quoted, are set forth in the following numbered (our numbering) paragraphs.

1. Plaintiff and defendant David A. Lee (hereafter David Lee) entered into an oral partnership agreement on or about April 1, 1959, for the specific purpose of purchasing a described tract of land in Oldtown Township, Forsyth County, the said two partners agreeing "to contribute equally to the purchase . . . and to share equally in the profit or loss . . ."

2. On or about April 1, 1959, *"the plaintiff paid to the defendant, Dexter Allen Lee, the sum of $4,600.00* as the plaintiff's portion of the down payment on said property, which said sum actually represented the entire down payment made on the said property." (Our italics.)

3. Pursuant to their agreement, plaintiff and David Lee purchased said property on April 13, 1959, agreeing to pay therefor the sum of $19,750.00, which sum was paid to John Lee Cooper, *et ux.,* "by a payment of $4,600.00 in cash, by two notes and by borrowing $12,000.00 on security of the property purchased from Piedmont Federal Savings and Loan Association."

4. Pursuant to agreement of plaintiff and David Lee, the property was conveyed by the Coopers to defendant Dexter Allen Lee (hereafter Dexter Lee) and wife, defendant Berttie W. Lee (hereafter Berttie Lee), by (recorded) deed of April 13, 1959.

5. Dexter Lee and Berttie Lee "have no interest in the said property, did not pay any of the purchase price," and hold title thereto as trustees for plaintiff and David Lee.

6. David Lee has had actual possession of the property since April 13, 1959, residing in the dwelling house thereon and renting portions thereof. In addition to his receipt and application of rentals from the property, David Lee "has paid some additional sums by

way of discharging notes against the said property, but has paid less on the property than has the plaintiff . . ."

7. Plaintiff "is actually an owner of one-half of the said property and is entitled to an accounting of the rents and profits from his co-owner, David A. Lee." Notwithstanding plaintiff's demands therefor, Dexter Lee and Berttie Lee have refused to convey to plaintiff his interest in the property and David Lee has failed to account to plaintiff.

8. The property is now worth much more than the price at which it was purchased on or about April 13, 1959.

Plaintiff prays that it be adjudged that Dexter Lee and Berttie Lee hold the title to the property in trust for plaintiff and David Lee; that David Lee be required to account to plaintiff; that the property be sold and the partnership dissolved; and that defendants be taxed with the costs.

Defendants, in a joint answer, denied all of plaintiff's essential allegations. They alleged the property was purchased by Dexter Lee and wife, Berttie Lee, from the Coopers, and that plaintiff has no interest therein.

Evidence was offered by plaintiff and by defendants.

The documental evidence consists of the following:

Plaintiff offered in evidence the record (Deed Book 781, page 513, Forsyth Registry) of the deed *dated* April 13, 1959, by which the Coopers conveyed the property to Dexter Allen Lee and wife, Berttie W. Lee. (Note: This deed is not set out in the record. There was evidence the transaction was closed on April 17, 1959.)

Dexter Lee was the only witness for defendants. He identified and defendants offered in evidence three documents, *viz.:* (1) A letter dated March 23, 1959 from David Lee to Stuart Bondurant Realty Company containing an offer to buy the property, deed to be made to "David Allen Lee," at the price of $19,000.00 payable (a) $500.00 as a good faith deposit, (b) $3,500.00 upon delivery of a deed conveying marketable title, and (c) $15,000.00 to be financed from a local savings and loan association, the seller agreeing to carry the portion of the $15,000.00 in excess of the maximum amount of available loan; (2) a note dated April 17, 1959 for $2,-100.00, payable one year after date, to John P. Cooper or order; and (3) a note dated April 17, 1959 for $1,100.00, payable two years after date to John P. Cooper or order. These notes were executed by "David A. Lee" and "D. A. Lee" as makers thereof.

A summary of the testimony is set forth in the opinion.

The court submitted and the jury answered the following issues:

"1. Did the plaintiff and the defendant, David A. Lee, enter into a partnership agreement to purchase a tract of land on Carter Circle in Oldtown Township, Forsyth County, North Carolina, by the terms of which each was to contribute equally to the purchase of said land and to share equally in the profit or loss of same, as alleged in the complaint? ANSWER: YES. 2. Are the defendants, Dexter Allen Lee and wife, Berttie W. Lee, holders of the said property on Carter Circle as trustees for the plaintiff, Sherman A. Bingham, and David A. Lee, as alleged in the complaint? ANSWER: YES."

Based upon said verdict, the court entered judgment that Dexter Lee and Berttie Lee held title to said property as trustees for plaintiff and David Lee; that plaintiff and David Lee are partners with respect to said property; that said partnership be dissolved; that the commissioner therein appointed sell said property at public auction in the manner specified; and that, after confirmation of the commissioner's sale, the net proceeds of the said sale, after defraying the cost of the said sale, "shall be divided and paid in equal portions to Sherman A. Bingham and David A. Lee."

Defendants excepted and appealed.

*White, Crumpler, Powell, Pfefferkorn & Green for plaintiff appellee.*

*Deal, Hutchins & Minor and Richard Tyndall for defendant appellants.*

BOBBITT, J. With reference to nonsuit, we consider only defendants' motion therefor made at the conclusion of all the evidence. G.S. 1-183; *Murray v. Wyatt,* 245 N.C. 123, 128, 95 S.E. 2d 541. Defendants excepted to and assign as error the denial of said motion.

David Lee is a son of Dexter Lee and wife, Berttie Lee. At the times referred to in the complaint, David Lee was the officer of Wachovia Bank and Trust Company in charge of Time Payment and FHA loans at its Stratford office. Dexter Lee was in the automobile business in Shelby.

Plaintiff's evidence tends to show:

In the spring of 1959, David Lee, in whom plaintiff had confidence, advised plaintiff "he had run across a real good buy on some property," and proposed that they purchase the property on a "50/50" basis. They inspected the property, decided "it was a good buy," and discussed plans for the development thereof.

Plaintiff testified: "As we left the property on the first day, Mr. Lee (David Lee) told me he did not have the money himself and

if I was interested, we'd start making plans to raise the money and proceed to buy it." Plaintiff was told the purchase price was $19,-750.00.

Prior to the purchase of the property, plaintiff delivered to David Lee a total of $2,600.00 in cash, first $1,000.00 and later $1,-600.00, for use in making the required down payment. David Lee advised plaintiff that the maximum loan that could be obtained from the Savings and Loan Association was $12,000.00 and that Mr. Cooper "was in agreement to accept notes for the balance of the down payment."

A day or so before the property was purchased, David Lee advised plaintiff the property could not be put in his (David Lee's) name, stating he wanted it put in the name of his father. Plaintiff agreed to this upon David Lee's assurance he would give plaintiff a paper showing plaintiff's interest in the property, including a statement showing how plaintiff's money had been used. Notwithstanding repeated demands therefor, plaintiff was unable to get such a paper from David Lee.

After the property was purchased, David Lee advised plaintiff it was necessary to raise money to pay a past due 60 or 90-day note to Mr. Cooper. Thereupon, plaintiff obtained and delivered $2,000.00 in cash to David Lee for use in payment of the note to Cooper.

From April 1959 David Lee had actual possession of the property. He resided therein, had complete charge thereof, and rented rooms. He received $10.00 a week from each of five renters. The amount of the monthly payment to the Savings and Loan Association was $96.00.

With reference to the failure of David Lee to give plaintiff the paper as promised, plaintiff testified: "After it stretched into weeks and months, he told me that he would reimburse me or give me back the money that I had put into it." Again: "(A)t that stage (no date given) of the game . . . I would be satisfied if he would just pay me the money . . . I had invested, and I felt it only fair that he would give me interest at the rate of six percent on the money that had been used." Thereafter, David Lee did give plaintiff $1,000.00, "ten one hundred dollar bills," and said "he thought that he could raise some more money within a week." Later, when advised by David Lee that he could not raise any more money, plaintiff "put the matter in the hands of (his) lawyer."

Plaintiff's only contact with Dexter Lee and Berttie Lee was on one occasion (no date given) when plaintiff, accompanied by his brother, George Bingham, went to Shelby to see them. Plaintiff first saw Berttie Lee and proceeded to tell her "about the business of the

property." She stated she knew nothing about it and did not discuss the matter with him. Thereafter, plaintiff and George Bingham located and talked with Dexter Lee.

Plaintiff's version of his conversation with Dexter Lee is as follows: "After I told Mr. Lee about putting the money into the property at 100 Carter Circle, he said he knew nothing about the transaction, . . . it was not to his knowledge that I had put anything in it, but he said that he was sure that if his son owed me the money that I would be paid for it. I told Mr. Dexter Lee . . . I didn't know how I would raise the money, but that if I had an opportunity to buy or sell it that I would give them what they had put in it, with interest, or either they would give me what I had invested, with interest, that I felt was the only fair way to settle it. Mr. Dexter Lee said he would talk to his son and would let me know. After that I did not hear anything further from either Mr. Dexter Lee or Mr. David Lee."

Mr. George Bingham testified plaintiff told him "he was going down there to see if he could either buy him out or get his money back out of the property." His testimony concerning the conversation with Dexter Lee was as follows: "I did hear Mr. Dexter Lee talk with my brother and well, he didn't seem to know all the transactions of the place. He said that the place was in his name and he felt that Dave would do what was right and that—he said he didn't feel that he was going to put any more money in the property himself, or have anything else to do with it. He just felt Dave —he said, 'If Dave owes you money I feel sure he'll pay you.' "

Plaintiff saw none of the documents referred to in our preliminary statement and did not participate in any of the transactions incident to the purchase from the Coopers. His information was based solely on what David Lee had told him.

There was evidence the property is now worth between $30,-000.00 and $40,000.00.

Dexter Lee's testimony tends to show:

He did not know plaintiff claimed any interest in the property until the visit by plaintiff and his brother *in the fall of 1963 or 1964*, some five or six years after he had purchased the property. His testimony concerning the transaction in April 1959 was as follows: "I did buy that property. The terms and conditions under which I purchased this property, well, we bought it, my boy and myself. Well, he didn't buy it, but he pointed it out to me. I came up here and I didn't have quite enough money so I put up $4,-000.00, and I taken—give Mr. Cooper two notes, one to be paid in twelve months and another to be paid in two years. Yes, these are the two notes that I gave him. Mr. Cooper kind of got in a hurry

for his money and we paid him both notes off in twelve months."

David Lee, who had contracted for the property, "couldn't buy it." He told Dexter Lee he did not have any money.

Dexter Lee and Berttie Lee signed the $12,000.00 deed of trust to the Savings and Loan Association. Berttie Lee did not sign either of the two notes to Mr. Cooper. Dexter Lee testified: "Cooper didn't care about her signing. All he wanted was my signature. I signed the note with David." He testified further that David Lee "gets money from (him) still when he hasn't got any renters."

Plaintiff's evidence contradicts rather than supports his allegation that on or about April 1, 1959, "the plaintiff paid to the defendant, Dexter Allen Lee, the sum of $4,600.00 as the plaintiff's portion of the down payment on said property . . ." Plaintiff's evidence is that he delivered $2,600.00 in cash to *David* Lee before the property was purchased and an additional $2,000 in cash to *David* Lee after the property was purchased.

In this jurisdiction, parol trusts may be enforced where the grantee takes title to property under an express agreement to hold the property for the benefit of another, other than the grantor. *McDaniel v. Fordham,* 261 N.C. 423, 135 S.E. 2d 22; *Carlisle v. Carlisle,* 225 N.C. 462, 35 S.E. 2d 418; *Taylor v. Addington,* 222 N.C. 393, 23 S.E. 2d 318.

"(A)n express trust is based upon a direct declaration or expression of intention, usually embodied in a contract; whereas a trust by operation of law is raised by rule or presumption of law based on acts or conduct, rather than on direct expression of intention." *Bowen v. Darden,* 241 N.C. 11, 13, 84 S.E. 2d 289.

The deed offered in evidence by plaintiff shows the Coopers conveyed the property to Dexter Lee and wife, Berttie Lee; and there is no allegation or evidence that plaintiff had any agreement with either of said grantees prior to said conveyance or thereafter. Plaintiff's action is to impose a resulting trust on the property on the ground he furnished at least one-half of the purchase price therefor.

"A resulting trust arises, if at all here, from the payment of the purchase money, and accordingly it is essential to the creation of such a trust that the money or assets furnished by or for the person claiming the benefit of the trust should enter into the purchase price of the property at or before the time of purchase." *Vinson v. Smith,* 259 N.C. 95, 98, 130 S.E. 2d 45, and cases cited; *Fulp v. Fulp,* 264 N.C. 20, 140 S.E. 2d 708. The quoted statement is applicable to the present case.

There is ample evidence that plaintiff delivered to David Lee $2,600.00 in cash for use in making the down payment; that plain-

tiff delivered to David Lee an additional $2,000.00 for use in paying a note to Cooper; and, in each instance, that David Lee represented the money *would be used* for such purposes. However, there is no evidence any part of the $4,600.00 was actually used in connection with the down payment or in connection with a note to Cooper. Plaintiff testified: "I don't know whether the money that I say I gave Mr. David Lee, don't know whether one dime of this money went into this property." Again: "I am telling this Court and the jury now that I don't know whether a dime of money that I gave to Mr. David Lee went into this property."

The evidence tends to show David Lee, in his separate dealings with plaintiff and with Dexter Lee, told each of them he (David Lee) had no money to invest in the property; and there is no evidence any funds of David Lee were invested in the property.

Dexter Lee testified *his* money paid the $4,000.00 down payment and the notes to Cooper. While this testimony cannot be accepted or considered in passing upon the motion for nonsuit, it is equally true that mere disbelief or skepticism with reference thereto is not evidence that any of plaintiff's money was actually invested in the property.

It is noteworthy that there is no evidence sufficient to show David Lee was in possession of the property *as a matter of right.*

*Thompson v. Davis,* 223 N.C. 792, 28 S.E. 2d 556, cited and relied on by appellee, as disclosed by the evidence reviewed in the opinion, is factually distinguishable.

Whether plaintiff is entitled to recover from David Lee $4,-600.00 plus interest less a credit of $1,000.00 is not presented for decision. Such is not the cause of action plaintiff alleged.

A plaintiff must prove his case *secundum allegata. Andrews v. Bruton,* 242 N.C. 93, 86 S.E. 2d 786, and cases cited. Here the evidence, when considered in the light most favorable to plaintiff, is insufficient to establish the cause of action alleged in the complaint. Hence, defendants' motion for judgment of nonsuit should have been granted. It is unnecessary to consider assignments of error directed to (1) provisions of the judgment, and (2) portions of the charge.

Reversed.