SYLVIA ANN PATTERSON, Plaintiff v. DENNIS STRICKLAND, JR., Defendant

No. COA97-1583

(Filed 15 June 1999)

## 1. Appeal and Error— record—motion to dismiss denied

A motion to dismiss based upon an alleged failure to serve a proposed record on appeal or to agree with defendant as to the procedure for preparing the record was denied where a record was submitted with a stipulated agreement as to the settlement of the record.

## 2. Statute of Limitations— instructions—interest in real property—fiduciary relationship

The trial court did not err in an action arising from the purchase of property by an unmarried couple in its instructions on the statute of limitations where defendant contended that the court erred by instructing that the statute began to run when defendant disavowed plaintiff's interest in the property, but the statute of limitations does not begin to run until a demand and refusal where a fiduciary relation exists.

## 3. Trials— instructions—no objection—finding deemed in accord with judgment

There was no error in an action arising from the purchase of property by an unmarried couple where defendant contended that the issues found by the jury did not support the judgment requiring transfer of a half interest in the property from defendant to plaintiff. Defendant did not object to the instructions before the jury retired and the court is deemed to have made a finding in accord with the judgment entered.

## 4. Evidence— fiduciaries—unmarried "husband-wife" relationship—admissible

The trial court did not err in an action arising from the purchase of property by an unmarried couple by admitting evidence of the parties' behavior as husband and wife to rebut defendant's claims of a mere landlord-tenant relationship. Although plaintiff argued that the testimony was relevant to demonstrate a fiduciary relationship and the jury determined that the parties were fiduciaries, that finding was limited to the facts and circumstances of this case; merely living together should not generally be enough to give rise to a fiduciary relationship.

**5. Statute of Frauds— ownership of property—unmarried couple**

The trial court erred by denying defendant's motion for a directed verdict based upon the statute of frauds in an action arising from the purchase of property by an unmarried couple. The only possible contract that could have existed involved the sale or conveyance of land or an interest in or concerning land, defendant properly pled the statute of frauds, and this oral contract cannot be specifically enforced against him.

**6. Trusts— purchase money resulting—summary judgment**

The trial court erred by granting defendant's motion for summary judgment on plaintiff's claim for a purchase money resulting trust arising from the purchase of land by plaintiff and defendant as an unmarried couple. If the facts alleged by plaintiff are true, a finder of fact could reasonably determine that plaintiff and defendant had an agreement to purchase the property together and that plaintiff was entitled to some share of the property. The statute of frauds does not apply to resulting trusts.

**7. Trusts— constructive—no presumption of confidential relationship**

In an action remanded on other grounds, the parties were not entitled upon the evidence presented to a presumption of a confidential relationship, as is usually involved in a constructive trust, but an instruction on constructive trusts might be appropriate on remand if plaintiff can provide evidence of a confidential relationship and fraud.

**8. Unjust Enrichment— purchase of land by unmarried couple**

A cross-assignment of error raising the issue of unjust enrichment in an action arising from the purchase of land by an unmarried couple was overruled where the jury did not reach that issue due to its answers on earlier issues. The issue should not arise on remand since both resulting and constructive trusts may be imposed to prevent unjust enrichment.

Appeal by plaintiff from order granting partial summary judgment filed 18 November 1996 by Judge Charles C. Lamm, Jr., in Mecklenburg County Superior Court. Appeal by defendant from judgment filed 5 December 1996 by Judge Marcus L. Johnson in Mecklenburg County Superior Court. Heard in the Court of Appeals 21 September 1998.

*Casstevens, Hanner, Gunter & Conrad, P.A., by Robert P. Hanner, II, and Mark D.N. Riopel, for plaintiff.*

*Law Offices of Raymond Mason Taylor, by Raymond M. Taylor and Amanda Spence, for defendant.*

LEWIS, Judge.

Plaintiff and defendant met in 1962 and began an intimate relationship in 1963, although plaintiff was married to another man until 1969. In 1975, defendant moved into plaintiff's mobile home with her, and in the spring of 1976 the couple moved into a house on 4.4 acres of land on Arrowood Road in Charlotte ("the Arrowood property"). It is the ownership of this property that lies at the center of the parties' present dispute.

Defendant purchased the Arrowood property on 12 December 1975 by making a down payment of $8,781.09 from his own funds and signing a promissory note and deed of trust obligating himself to pay a total of an additional $30,747.60 over ten years at $256.23 per month. The deed was made to defendant alone, and plaintiff did not attend the closing or ask defendant how title to the land was taken. Plaintiff did, however, contribute $160.00 per month, and she continued to make payments in that amount even after the mortgage was satisfied on 2 January 1986. She testified at trial that her understanding about the purchase of the property was "[t]hat we would buy the property together and we would live there as a family with the children. It would be our—our home."

In 1987, the word "rent" began appearing in the memo portion of some of plaintiff's checks. When plaintiff co-signed a mortgage for her son in 1990, she signed a financial disclosure form stating that she rented the Arrowood property from defendant. Defendant completed a portion of that form as "landlord/creditor," marking this a "rental account" and noting that plaintiff had paid $160.00 per month in rent since 1975. In a 1996 deposition, plaintiff explained her decision to complete the form in this manner by stating, "[T]he title was not in my name."

Following the death of his parents in early 1985, defendant began spending an increasing amount of time at his family's farm in Maxton. In 1990 plaintiff confronted her niece in Maxton regarding the niece's relationship with defendant, marking the last time that plaintiff saw defendant. Defendant married plaintiff's niece in March

of 1995, and plaintiff was asked to vacate the Arrowood property later that month.

Plaintiff filed suit on 19 April 1995, claiming an interest in the property and citing four different causes of action that would entitle her to recover: purchase money resulting trust, constructive trust, quantum meruit—quasi contract, and unjust enrichment. Defendant moved for summary judgment as to each of these issues, and the trial court granted this motion as to the first issue only. From the grant of summary judgment as to the resulting trust claim, plaintiff appeals to this Court. The case went to trial, where plaintiff's equitable claims appear to have been transformed into a contract case. In the charge conference, the trial judge stated that this was "just a contract case" and told counsel for plaintiff, "To the extent that you're requesting instructions on constructive trust, I will non-suit you, on that issue." Defendant's motion for summary judgment on plaintiff's resulting trust claim already having been granted, there were no trust issues submitted to the jury. Instead, the following issues were submitted to and answered by the jury at the close of all the evidence:

> ISSUE 1: Before acquiring the property, did the Defendant agree, by contract, with the Plaintiff, that the Plaintiff would be a one-half owner of the property?

> ISSUE 2: At the time C.C. Thomas deeded the property to the Defendant, did a fiduciary relationship exist between the Plaintiff and the Defendant?

> ISSUE 3: Did the Plaintiff commence this action before the expiration of the three-year statute of limitations?

When the jury answered all three questions affirmatively, the trial court made conclusions of law granting plaintiff a one-half undivided interest in the Arrowood property. From that judgment, defendant appeals.

[1] Defendant filed a motion to dismiss plaintiff's appeal on 6 April 1998, and the matter has been referred to this panel. Defendant asserts that plaintiff "did not serve a proposed Record on Appeal, attempt to agree with Defendant as to the procedure for preparing the record on appeal, or file a motion to extend her time to do so within the 35 days mandated by Rule 11 . . . ." Rule 11(d) of the North Carolina Rules of Appellate Procedure requires that there "be but one record on appeal," and the record submitted in this action contains a stipulated agreement as to the settlement of the record on appeal. We

are able to address the appeals of both parties from the record as filed 23 December 1997. Therefore, defendant's motion to dismiss plaintiff's appeal is denied.

## I. Defendant's Appeal

### A. *Statute of Limitations*

[2] As appellant, defendant first argues that the trial court's instructions on the statute of limitations were given in error. After stating to the jury that the statute of limitations for this action was three years, the court continued,

> The time at which the statute of limitations for the plaintiff's claim begins to run is the time the defendant's disavow [sic] of the plaintiff's interest in the property was discovered by the plaintiff; or, ought reasonably to have been discovered by the plaintiff; whichever occurred first.

Defendant contends that these instructions blurred the elements of a constructive trust with contract issues by requiring a disavowal, which is required for a constructive trust but is not required to recover in contract. *Compare Cline v. Cline*, 297 N.C. 336, 348, 255 S.E.2d 399, 407 (1979) (stating that in a constructive trust action, "[t]he statute [of limitations] begins to run only from the time the trustee disavows the trust and knowledge of his disavowal is brought home to the *cestui que trust*, who will then be barred at the end of the statutory period."); *Wilson v. Development Co.*, 276 N.C. 198, 214, 171 S.E.2d 873, 884 (1970) (stating that in a contract action, "[t]he cause of action accrues when the wrong is complete, even though the injured party did not then know the wrong had been committed.")

However, as plaintiff notes, the trial court's instructions were not erroneous in this regard if the parties were fiduciaries. "It is well settled that where a fiduciary relation exists between the parties . . . the statute of limitations does not begin to run until a demand and refusal." *Efird v. Sikes*, 206 N.C. 560, 562, 174 S.E. 513, 513-14 (1934). The existence of a fiduciary relationship, being a question of fact, *Crew v. Crew*, 236 N.C. 528, 530, 73 S.E.2d 309, 311 (1952), was submitted to the jury in Issue 2. The jury found that, at the time C.C. Thomas deeded the property to defendant, plaintiff and defendant were in a fiduciary relationship. Neither party argues that this finding constituted error, so we do not review it.

Since the parties were found to be fiduciaries at the time the contract was entered, plaintiff could not sue on the contract until defendant disavowed her interest in it. *Efird*, 206 N.C. at 562, 174 S.E. at 513-14. Although plaintiff's own testimony indicated that she knew or should have known that the Arrowood property was not in her name since at least 1990, the formal disavowal did not occur until defendant demanded she vacate the property in March of 1995. By filing this suit in April of 1995, plaintiff's claim was not barred by the statute of limitations.

B. *Sufficiency of facts to support the verdict*

[3] Defendant's second argument as appellant is that the three issues found by the jury do not support a judgment requiring defendant to transfer a one-half interest in the Arrowood property to plaintiff. Defendant contends in his brief, "The jury did not find that Defendant breached the contract, nor did it find that Plaintiff upheld her end of the bargain. Without such findings, the verdict is meaningless." The jury was not asked to determine these factual issues, and defendant does not explain why he did not request their submission to the jury.

> If, in submitting the issues to the jury, the judge omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the judge may make a finding; or, if he fails to do so, he shall be deemed to have made a finding in accord with the judgment entered.

N.C. Gen. Stat. § 1A-1, Rule 49(c) (1990). Defendant did not formally object to the instructions as given before the jury retired. As such, the trial court is "deemed to have made a finding in accord with the judgment entered." *Id.*

C. *"Husband-Wife" Relationship*

[4] Defendant's third argument as appellant is that the trial court erred in admitting evidence that suggested the parties had a "husband and wife" relationship. Defendant made a motion in limine to suppress evidence of the "husband-wife" relationship or any evidence of a common law marriage, arguing that it was irrelevant to proving or disproving the existence of a contract between the parties on 12 December 1975 and that it was unfairly prejudicial to defendant. The trial court ruled that evidence of a lawful, common law marriage

would be inadmissible, but permitted the introduction of "testimony, descriptive in nature, that it was as husband and wife, but not as legal husband and wife." The court went on to note that "just using the term [']living together as husband and wife['] does not necessarily connote that we are alleging that we are legal husband and wife."

Plaintiff's brother and a friend each testified at trial on the appearance of this relationship as one of husband and wife, but defendant entered no objection at the time. After plaintiff herself testified that during the six months she and defendant lived in the mobile home, they "lived as husband and wife," counsel for defendant then requested and was granted "a continuing objection for the record concerning husband and wife." Testimony was later admitted concerning the existence of a "husband and wife" relationship during the years the parties lived together on the Arrowood property.

Plaintiff argues that this evidence was relevant not only to impeach defendant's deposition testimony that the relationship was merely one of landlord and tenant, but to demonstrate the existence of a fiduciary relationship. We are extremely reluctant to recognize a fiduciary relationship between unmarried roommates, but we are also cognizant of courts' longstanding reluctance to define a fiduciary relationship.

> The courts generally have declined to define the term "fiduciary relation" and thereby exclude from this broad term any relation that may exist between two or more persons with respect to the rights of persons or property of either. In this, the courts have acted upon the same principle and for the same reason as that assigned for declining to define the term "fraud." The relation may exist under a variety of circumstances; it exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . . . "[I]t extends to any possible case in which a fiduciary relation exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other."

*Tin Originals, Inc. v. Colonial Tin Works, Inc.*, 98 N.C. App. 663, 666, 391 S.E.2d 831, 833 (1990) (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931) (citations omitted)). Because the existence of a fiduciary relationship is a question of fact, *Crew*, 236 N.C. at 530, 73 S.E.2d at 311, and because there is no argument supporting the assignment of error that the trial court's actual instruc-

tions to the jury on the definition of a fiduciary were incorrect, we are bound by the jury's determination that under these facts and circumstances the parties were fiduciaries. These findings should be limited to the facts and circumstances of this case and we emphasize that merely living together should not, generally, be enough to give rise to a fiduciary relationship. The descriptive evidence of the parties' behavior as husband and wife was relevant here to rebut defendant's claims of a mere landlord-tenant relationship, and defendant's assignments of error on this point are overruled.

### D. *Statute of Frauds*

[5] Defendant's final argument as appellant is that the trial court erred in denying his motion for a directed verdict because plaintiff's claim of an oral contract is barred by the statute of frauds. According to our statutes,

> All contracts to sell or convey any lands, . . . or any interest in or concerning them, . . . shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized.

N. C. Gen. Stat. § 22-2 (1986). Plaintiff claims that a contract concerning the ownership of land is not automatically governed by the statute of frauds, citing only *Potter v. Homestead Preservation Assn.*, 330 N.C. 569, 412 S.E.2d 1 (1992). Plaintiff notes that *Potter* made a distinction to the rule regarding "a parol partnership agreement or joint enterprise entered into by two or more persons for the express purpose of carrying on the business of purchasing and selling real estate, or interests therein, for speculation, the profits to be divided among the parties . . . ." *Id.* at 577, 412 S.E.2d at 6. The relationship between plaintiff and defendant may have been many things, but the evidence does not indicate that it was a partnership of real estate speculators.

Plaintiff argues in her brief as appellee that, prior to the actual transfer, she contracted to be a joint owner of the disputed property but that "[t]his agreement did not specify that the land would be partially conveyed to her by deed when the house is paid off." This is a different story than was proposed in her complaint, which alleged, among other things:

> 36) At the time Plaintiff was providing funds to Defendant for the purchase of her one-half interest in the [Arrowood property],

PATTERSON v. STRICKLAND

[133 N.C. App. 510 (1999)]

> *Plaintiff expected to receive payment in the form of the conveyance of a one-half interest in the aforesaid real property to Plaintiff.*

> 37) Plaintiff's expectation of the aforesaid payment is reasonable.

> 38) Defendant received Plaintiff's service in the form of funds to help purchase the subject real property with the knowledge or a reason to know that *Plaintiff expected to be paid in kind with the conveyance of a one-half interest in the [Arrowood property]*.

(emphasis added). According to our Supreme Court,

> Since the contract upon which the plaintiff's alleged cause of action is bottomed rests solely in parol, and since the said contract is one to sell and convey lands and no memorandum thereof has been put in writing and signed by the party charged therewith, or by any person by him thereto lawfully authorized, it cannot, under the statute, be enforced.

*Chason v. Marley*, 224 N.C. 844, 845, 32 S.E.2d 652, 653 (1945).

Plaintiff now argues that the trial court, viewing the evidence in the light most favorable to the plaintiff upon defendant's motion for directed verdict, determined "that the contract was not one concerning the conveyance or transfer of land, but rather that the property taken by Defendant-Appellant [was] for both of them." Citing no authority, plaintiff concludes, "Therefore the Statute of Frauds is inapplicable." We disagree.

The only possible contract that could have existed was one involving the sale or conveyance of land or an interest in or concerning land; the subject matter of the alleged contract was nothing if it was not the agreement to buy the Arrowood property. Defendant properly pled the statute of frauds in his motion for a directed verdict, and as such this oral contract cannot be specifically enforced against him. *See, e.g., Pickelsimer v. Pickelsimer*, 257 N.C. 696, 698, 127 S.E.2d 557, 560 (1962). The trial court committed reversible error in denying defendant's motion for a directed verdict on this point, and the judgment awarding plaintiff a one-half interest in the Arrowood property on a contract theory is reversed. As will be set out below, though, plaintiff is not without remedies on remand.

## II.  Plaintiff's Appeal

### A.  *Purchase-Money Resulting Trust*

[6] As appellant, plaintiff argues that the trial court should not have granted defendant's motion for summary judgment as to plaintiff's claims that a purchase-money resulting trust arose between the parties. Plaintiff asserts that a factual dispute exists concerning whether it was the parties' intention that they share a one-half interest in the Arrowood property, and claims to have made out a *prima facie* case for the existence of a resulting trust. Both parties cite *Mims v. Mims*, 305 N.C. 41, 46, 286 S.E.2d 779, 783 (1982) to define a resulting trust.

> A resulting trust arises "when a person becomes invested with the title to real property under circumstances which in equity obligate him to hold the title and to exercise his ownership for the benefit of another. . . . A trust of this sort does not arise from or depend on any agreement between the parties. It results from the fact that one man's money has been invested in land and the conveyance taken in the name of another."

*Id.* (quoting *Teachey v. Gurley*, 214 N.C. 288, 292, 199 S.E. 83, 86-87 (1938)).

Regarding purchase-money resulting trusts, *Mims* quotes *Cline v. Cline*, 297 N.C. 336, 255 S.E.2d 399 (1979), for the proposition that " '[t]he general rule is that the trust is created, if at all, in the same transaction in which the legal title passes, and by virtue of the consideration advanced before or at the time the legal title passes.' " *Mims*, 305 N.C. at 47, 286 S.E.2d at 784 (quoting *Cline*, 297 N.C. at 344, 255 S.E.2d at 399). Plaintiff directs our attention, however, to another quote from *Cline*: "There is no difference in principle between paying money toward the purchase price at the time of the delivery of a deed and contracting at that time to pay the same sum later and then paying it as promised." *Cline*, 297 N.C. at 346, 255 S.E.2d at 406.

There seem to be two possible ways to form a resulting trust based on the time at which consideration is paid, according to *Mims* and *Cline*. Either the consideration is paid before or at the time legal title passes, *see Mims*, or it is paid after such time pursuant to an earlier agreement between the parties, *see Cline*. In either case, plaintiff's money must have actually been used toward the purchase of the property. *See Bingham v. Lee*, 266 N.C. 173, 179, 146 S.E.2d 19, 23

(1966) (stating that " 'it is essential to the creation of such a trust that the money or assets furnished by or for the person claiming the benefit of the trust should enter into the purchase price of the property at or before the time of purchase.' " (quoting *Vinson v. Smith*, 259 N.C. 95, 98, 130 S.E.2d 45, 48 (1963)). If plaintiff were required to make her payment before or at the time of the delivery of the deed, her resulting trust claim would fail because the down payment came entirely from defendant's funds.

That leaves plaintiff needing to allege that she and defendant had an agreement at the time the property was purchased that plaintiff would make payments over time toward the purchase price. This she did in her verified complaint:

9) Plaintiff and Defendant went to view the Arrowood . . . property and decided to make an offer to purchase said real estate. The parties discussed the fact that the property would be "theirs" and that they each would share an equal interest in said property.

10) Plaintiff and Defendant agreed that they would present an offer to Mr. Thomas wherein they would make a down payment on said residence and then offer to finance the purchase of the property with Mr. Thomas over a ten year period at the cost of $260.00 per month. As part of the decision to make such an offer to Mr. Thomas, Defendant agreed to make the down payment and Plaintiff promised to pay to Defendant $160.00 per month towards the $260.00 per month ten-year obligation.

If these facts were taken as true, a finder of fact could reasonably determine that plaintiff and defendant had an agreement to purchase the property together and that plaintiff was entitled to some share of the property. Summary judgment would then be inappropriate. "Summary judgment is proper when it appears that even if the facts as claimed by plaintiff are taken as true, there can be no recovery." *Hudson v. All Star Mills*, 68 N.C. App. 447, 450, 315 S.E.2d 514, 516, *disc. review denied*, 311 N.C. 755, 321 S.E.2d 134 (1984).

The statute of frauds, as set out in G.S. § 22-2, is no bar to plaintiff's recovery under a resulting trust claim. It has long been established that the statute of frauds does not apply to resulting trusts. *See, e.g., Hoffman v. Mozeley*, 247 N.C. 121, 123-24, 100 S.E.2d 243, 245-46 (1957) (citing *Greensboro Bank & Trust Co. v. Scott*, 184 N.C. 312, 114 S.E. 475 (1922)). As such, the trial court's grant of summary

judgment on plaintiff's resulting trust claim must be reversed and the case remanded for a new trial to determine whether an agreement existed under which plaintiff's monthly payments were actually used toward the purchase of the Arrowood property.

## B. *Constructive Trust*

**[7]** As appellee, plaintiff addresses in a cross-assignment of error the trial court's failure to present the issue of constructive trust to the jury. Unlike a resulting trust, a constructive trust "arises when one obtains the legal title to property in violation of a duty he owes to another. Constructive trusts ordinarily arise from actual or presumptive fraud and usually involve the breach of a confidential relationship." *Fulp v. Fulp*, 264 N.C. 20, 22, 140 S.E.2d 708, 711 (1965). Plaintiff herself notes that the parties are entitled to no presumption of a confidential relationship upon the evidence presented. If, however, plaintiff can provide evidence of a confidential relationship and fraud, a jury instruction on remand regarding constructive trusts might be appropriate.

## C. *Unjust Enrichment / Quantum Meruit*

**[8]** Finally, plaintiff raises the issue of unjust enrichment in her only remaining cross-assignment of error argued in her brief as appellee. Plaintiff notes that "[t]he trial court presented the issue of restitution to the jury in issues 4 and 5" and that "[t]he instructions the judge gave the jury regarding restitution are similar to those needed to make a finding of unjust enrichment or quantum meruit . . . ." The jury did not reach these issues because it was not required to after answering in the affirmative to the first three issues proposed; as such, plaintiff was not prejudiced on this point at trial. Plaintiff's cross-assignment of error on this point is overruled. At the new trial, this issue should not arise since both resulting and constructive trusts may be imposed to prevent unjust enrichment.

In summary, the result reached by the trial court awarding plaintiff a one-half share in the Arrowood property may have been correct and may be the result reached at a new trial. It cannot now stand on the contract theory on which it was based because the alleged contract violates the statute of frauds. Plaintiff brought her case on equitable theories and, having no remedies at law, it should be tried on those theories where appropriate. As such, we reverse and remand for a new trial consistent with this opinion.

Reversed and remanded.

Chief Judge EAGLES and Judge HUNTER concur.