MELZIE E. ELLIOTT v. DUKE UNIVERSITY, INC.

No. 8214SC1262

(Filed 21 February 1984)

1. Contracts § 25.1— allegation of "contract" between plaintiff and Divinity School—summary judgment for defendant proper

In an action in which plaintiff alleged that defendant university had contracted with plaintiff to permit her to change her status in defendant's Divinity School from special student to regular degree candidate in the Masters of Religious Education degree program, plaintiff's forecast of evidence was insufficient to survive defendant's motion for summary judgment where plaintiff asserted that the alleged agreement between the parties consisted of a statement by the director of admissions that plaintiff was "in transition from the status of special student to that of a regular student." The absence of a mutual agreement upon plaintiff's acceptance into the degree program was made clear by plaintiff's statement that the director of admissions did not promise that she would become a degree candidate, that he did not tell her when the transition period would end, that he did not tell her how long the transition period would be nor what she would have to accomplish in order to complete the transition, and that no one else at the Divinity School ever told plaintiff after the beginning of the Fall 1977 semester that she was a regular degree candidate. Although plaintiff may have understood the director of admissions' statements to mean that if she paid her tuition, took the selected courses suggested, and did her work she would be *in transition* to regular degree status, this was not the same as agreement that she would thereby *attain* regular degree status.

2. Contracts § 25.4; Principal and Agent § 4— contract claim—failure to prove agency

In an action in which plaintiff alleged that defendant, through its agent, the director of admissions at the Duke Divinity School, had contracted with plaintiff to permit her to change her status in defendant's Divinity School from special student to regular degree candidate in the Masters of Religious Education degree program, plaintiff's contract claim was deficient in that she failed to allege and prove that the director of admissions was an agent of defendant with either the authority or apparent authority to alter the recognized procedure by which an individual becomes a regular degree candidate, and she had to establish this agency in order to establish her right to recover against the defendant.

APPEAL by plaintiff from *McLelland, Judge.* Judgment entered 27 April 1982 in Superior Court, DURHAM County. Heard in the Court of Appeals 24 October 1983.

Plaintiff, Melzie E. Elliott, initiated this action on 26 July 1979 by filing a complaint against defendant, Duke University, Inc., alleging that defendant, through its agent, B. Maurice

Elliott v. Duke University

Ritchie, had contracted with plaintiff to permit her to change her status in defendant's Divinity School from special student to regular degree candidate in the Masters of Religious Education degree program. As her first claim for relief, plaintiff requested specific performance of the alleged contract and in addition, money damages for rental expenses incurred between May, 1978 and July, 1979. In the alternative, plaintiff requested money damages for breach of the alleged contract and special damages incident thereto. Plaintiff's second and third claims for relief were based on theories of implied contract or detrimental reliance and unjust enrichment, respectively.

Defendant answered on 5 October 1979, denying plaintiff's allegation as to the formation and existence of such a contract and alleging as affirmative defenses that plaintiff's reliance upon the alleged representations was not reasonable in light of the information available to plaintiff and the lack of actual, implied or apparent authority on the part of the University personnel who dealt with plaintiff to either contract with plaintiff to change her status from special student to regular degree candidate, or to bind Duke University to any change in plaintiff's status.

Following extensive discovery by the parties in which the deposition of plaintiff and several employees of defendant were taken, defendant filed a motion for summary judgment. Plaintiff presented no affidavits in opposition to the motion, and defendant relied solely upon the pleadings, depositions and other discovery materials on file. Defendant's motion for summary judgment was granted, summary judgment was entered against plaintiff, and plaintiff appeals.

*Loflin & Loflin, by Thomas F. Loflin, III, for plaintiff appellant.*

*Powe, Porter and Alphin, P.A., by Edward L. Embree, III, for defendant appellee.*

JOHNSON, Judge.

This is an appeal from an order granting summary judgment to defendant Duke University in plaintiff's action seeking, *inter alia*, specific performance of an alleged contract between plaintiff and the Director of Admissions of the defendant's Divinity School.

The complaint alleged that pursuant to the purported contract, plaintiff, then a non-degree special student, would be permitted to enter the Master of Religious Education (M.R.E.) degree program, bypassing the traditional admissions process, by simply taking certain courses allegedly selected for her by the Director of Admissions in the fall of 1977. We find no error in the trial court's ruling.

The question before the court on motion for summary judgment is whether the pleadings, depositions, answers to interrogatories, and admissions for file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a party is entitled to judgment as a matter of law. G.S. 1A-1, Rule 56(c). The burden upon the moving party is to establish that there is no genuine issue as to any material fact remaining to be determined. *Savings & Loan Assoc. v. Trust Co.*, 282 N.C. 44, 191 S.E. 2d 683 (1972). This burden may be carried by proving that an essential element of the opposing party's claim is nonexistent or by showing through discovery that the opposing party cannot produce enough evidence to support an essential element of his claim. *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 251 S.E. 2d 419 (1979). The purpose of summary judgment is to eliminate formal trials where only questions of law are involved by permitting penetration of an unfounded claim or defense in advance of trial and allowing summary disposition for either party when a fatal weakness in the claim or defense is exposed. *Id.*

The evidentiary forecast plaintiff presented tends to show the following facts: Plaintiff served as an employee in the public school system of Miami, Florida for a period of 29 years. After retiring from that system as a librarian, plaintiff developed a desire to write articles on religious subjects and visited Duke University to determine how she might take courses through its Divinity School. Officials there explained that although most individuals taking courses at the Divinity School did so as regular degree candidates, it was also possible to take courses and be classified as a special student.

The major difference between special student status and degree candidate status is that individuals classified in the latter category work towards obtaining a recognized degree, while individuals in the former category take the same courses, pay the

same tuition (with the exception of certain student activity fees), but receive full course credit only in the event that they subsequently enter into a recognized degree program at Duke University. Upon filing an application to enter the Divinity School as a special student, plaintiff received a copy of the Divinity School's official Bulletin setting forth the requirements for becoming both a regular degree candidate and a special student. All applicants for admission as regular degree candidates were required to submit an application to the Divinity School, and to have that application acted upon favorably by an Admissions Committee consisting of Divinity School faculty and students. In contrast, special student status may be granted with just the approval of the Director of Admissions and the Dean of the Divinity School. In his deposition, Thomas A. Langford, Dean of the Divinity School, testified that the Director of Admissions does have authority to admit someone to special student status, but has no authority whatsoever to admit an applicant to a regular degree program.

Plaintiff went through the proper procedure for attaining special student status in the fall of 1976. Her application was accepted, and she paid her tuition and enrolled in courses during the 1976-1977 academic year and during the 1977 summer session. Although initially it was plaintiff's desire to attend the Divinity School for approximately one year only, she subsequently decided that to write upon religious subjects from a black perspective it would be necessary for her to take certain courses which were not offered by the Divinity School on a regular basis. As such, it would be necessary for her to attend classes for more than one year. Plaintiff then decided that she would like to pursue the degree of Master of Religious Education in the Duke Divinity School.

During the late summer of 1977, plaintiff conferred with Mr. B. Maurice Ritchie, who was then Director of Admissions for the Divinity School, and learned that in the past special students had on occasion switched over into the regular degree program. Mr. Ritchie indicated that he and plaintiff would talk further on the subject another time.

Just prior to the beginning of the 1977-1978 academic year, plaintiff and Mr. Ritchie had a second conference. Plaintiff testified that at this time, Mr. Ritchie selected plaintiff's courses

for the fall 1977 term. This selection included certain courses that were "core courses," or courses required of all students working for a degree in the Divinity School. According to plaintiff's deposition, Mr. Ritchie stated to her that "he had talked with someone and that we have decided to let you go into the regular program." Further, that in connection with his selection of core courses for her, Mr. Ritchie stated that he was giving plaintiff such courses because she was "in transition from the status of special student to that of regular student."

According to Mr. Ritchie's deposition, he informed plaintiff of the standard admissions process for all degree candidates, and he denied ever having used the phrase "in transition" in discussing plaintiff's status with her. Ritchie explained that there were only two "categories" or "routes" for students in the Divinity School, degree program or special student. "My terminology, again, would be . . . she remained a special student, making the case for admission through the selection of core courses." Mr. Ritchie testified further that the primary issue discussed was the nature of the courses plaintiff had taken to date, the inadequacy of those courses for purposes of evaluating plaintiff's capabilities, and the necessity for her moving in her course selection into core courses where she should make a credible academic showing in order to establish credibility with the committee for admission to the degree program.

As a result of this meeting, plaintiff enrolled in the courses selected for her in the Divinity School, paid her tuition for the first semester of the 1977-1978 academic year, and took the selected courses. She repeated this process for the spring 1978 semester. The tuition plaintiff paid for both semesters of the 1977-1978 academic year included a charge for student activity fees, normally only charged to regular degree candidates and not special students. During the 1977-1978 year, plaintiff attended her classes under the belief that she had made "the transition" from special student status to regular degree status. Plaintiff then remained in Durham during the summer of 1978, preparing to resume her studies toward the M.R.E. degree in September, 1978. On 28 August 1978 plaintiff was informed by Divinity School officials that she was not considered a regular degree candidate and that she had not made a proper application to enter the program. Subsequently, plaintiff submitted a proper application to the

University for admission as a regular degree candidate. Ultimately, the Divinity School Admissions Committee denied plaintiff's application for admission to degree status.

[1] Plaintiff argues that the foregoing evidence raises a genuine issue of material fact as to whether plaintiff and defendant's agent, Mr. Ritchie, reached a meeting of the minds as to what performance by plaintiff would serve to effect her acceptance into the school's program leading to the Master of Religious Education degree. Plaintiff grounds her right of recovery almost exclusively upon the following facts: Director of Admissions Ritchie told her she was "in transition" from special status to regular degree candidate status, selected core courses for her to take one semester, and never told her there were procedures to follow besides taking courses to switch from special to degree status. Plaintiff contends that she performed her part of the agreement, paid tuition, took the prescribed courses, and therefore is entitled to specific performance of the alleged contract to admit her to the degree program. We do not agree.

Considered in the light most favorable to her, plaintiff, in both her verified complaint and deposition, at most alleges an agreement that she be placed "in transition," and that was, in effect, done. The record discloses that plaintiff took the prescribed courses, but that her record in those courses was not sufficient to get her admitted into the degree program on the basis of her course performance. Furthermore, despite the differing recollections of the facts presented by plaintiff and Mr. Ritchie in their depositions, it is clear that defendant met its burden at the hearing for summary judgment by showing that no matter what plaintiff understood or inferred from Mr. Ritchie's statements, plaintiff's own deposition testimony revealed that there was never a concrete agreement regarding admission between the parties with definite terms capable of enforcement.

It is well established that a valid contract comes into existence only where the parties involved mutually assent to the same agreement. *Goeckel v. Stokely*, 236 N.C. 604, 73 S.E. 2d 618 (1952). Where one party simply believes that a contract exists, but there is no meeting of the minds, the individual seeking to enforce the obligation upon a contract theory is without a remedy. *Brown v. Williams*, 196 N.C. 247, 145 S.E. 233 (1928).

There is no contract unless the parties assent to the same thing in the same sense. A contract is the agreement of two minds—the coming together of two minds on a thing done or to be done. "A contract, express or implied, executed or executory results from the concurrence of two minds of two or more persons, and its legal consequences are not dependent upon the impressions or understandings of one alone of the parties to it. It is not what either thinks, but what both agree . . ." (Citations omitted.)

*Id.* at 250, 145 S.E. at 234. Furthermore, to be binding, the terms of a contract must be definite and certain or capable of being made so; the minds of the parties must meet upon a definite proposition. *Horton v. Refining Company*, 255 N.C. 675, 122 S.E. 2d 716 (1961). Summary judgment in favor of the defendant is properly entered when the evidentiary forecast discloses that the parties never reached a mutual understanding or meeting of the minds as to the essential terms of the contract. *Gregory v. Perdue, Inc.*, 47 N.C. App. 655, 267 S.E. 2d 584 (1980).

It is evident from plaintiff's deposition testimony that during the 1977-1978 academic year she believed that she had become a regular degree student primarily on the basis of certain statements made to her by Mr. Ritchie. However, nowhere in the verified complaint or her deposition does plaintiff assert that the alleged agreement between the parties consists of anything more than Mr. Ritchie's statement that plaintiff was "in transition from the status of special student to that of a regular student." The absence of a mutual agreement upon plaintiff's acceptance into the degree program is made clear by the following exchange which occurred during plaintiff's deposition testimony upon questions from defendant's attorney:

Q. Okay. And the basis that, upon which you felt that Duke had committed itself to a contract was Dean Ritchie's alleged representation to you that you were in transition—

A. Right.

Q. —From special student to a degree candidate?

A. Right.

Elliott v. Duke University

Q. Did Dean Ritchie ever promise you that you would become a regular degree candidate?

A. He said I was in transition.

Q. Is that all he said?

A. He said: I am giving you—if you want the exact words—I am giving you these courses because you are in transition from the regular—from the special student status to that of a regular student.

Q. Did he promise that if you completed those courses you would be a regular degree candidate?

A. If I, if I completed the work.

Q. Did he promise you that, Ms. Elliott, or did he merely say that you are in transition and these courses are part of the transition?

A. I repeat. He said: I am giving you these courses because you are in transition from—

Q. He never did promise that you would become a degree candidate, did he, Ms. Elliott?

A. You mean did he ask—just tell me, now, you'll become a degree candidate?

Q. Yes. Did he ever make that statement to you?

A. I don't remember that he did.

Plaintiff states further in her deposition that Mr. Ritchie did not promise that she would become a degree candidate, that he did not tell her when the transition period would end, that he did not tell her how long the transition period would be nor what she would have to accomplish in order to complete the transition, and that no one else at the Divinity School ever told plaintiff after the beginning of the fall, 1977 semester that she was a regular degree candidate.

Although plaintiff may have understood Mr. Ritchie's statements to mean that if she paid her tuition, took the selected courses and did her work she would be *in transition* to regular degree status, this is not the same as an agreement that she

would thereby *attain* regular degree status. In normal parlance, "in transition" implies that one is on the way to a desired goal, not that one has arrived. Plaintiff's unilateral belief that they had reached an agreement as to what steps were necessary for her to take to reach degree status is insufficient to prove the existence of a contract to admit her to the degree program. Furthermore, the statement of Mr. Ritchie itself is too indefinite to provide the basis of an enforceable contract. In sum, no evidence of any specific facts showing mutual assent to a well defined agreement was ever offered. Therefore, the grant of defendant's motion for summary judgment was entirely proper on the basis of plaintiff's inability to prove the existence of a contract due to the lack of mutual assent.

[2] Furthermore, the preview of plaintiff's evidence reveals another respect in which plaintiff's contract claim is deficient. In order to establish her right to recover against the defendant Duke University, a corporate entity, on the basis of an alleged contract, plaintiff must allege and prove that Mr. Ritchie was an agent of defendant with either the authority or apparent authority to alter the recognized procedure by which an individual becomes a regular degree candidate. *See Zimmerman v. Hogg & Allen,* 286 N.C. 24, 209 S.E. 2d 795 (1974).

The discovery conducted by the plaintiff established that Mr. Ritchie as Director of Admissions had no actual authority to admit students as regular degree candidates other than through the regular admissions process. All applicants for admission as regular degree candidates were required to submit an application to the Divinity School, demonstrating certain vocational objectives and academic achievement and to have that application acted upon favorably by an Admissions Committee consisting of Divinity School faculty and students. Director of Admissions Ritchie had no actual authority to admit students at all except as special students.

The rule as to the apparent authority of an agent to bind his principal is as follows:

> [W]hether or not the agent is acting within the apparent scope of his authority must be determined by what the principal has done, not by the unratified acts and declarations of the agent. If the facts and circumstances of the particular

case reveal that an ordinarily prudent man would have been put on notice that one with whom he was dealing was not acting within the apparent scope of his authority, the principal is not bound under well-settled principles of agency law.

*Zimmerman, supra,* 286 N.C. at 31, 209 S.E. 2d at 799. The only manifestations made by the defendant principal with regard to which individuals had authority to admit applicants to regular degree programs in defendant's Divinity School were those contained in the Divinity School Bulletin which was received by plaintiff prior to her first semester as a special student. The Bulletin states that the Director of Admissions may admit special students, but that a faculty-student Admissions Committee passes upon degree applications. Plaintiff's evidence includes no statement showing that defendant made other representations to her regarding Mr. Ritchie's authority to admit her as a regular degree student. All of plaintiff's assertions regarding Mr. Ritchie's authority to bind defendant are based solely upon his own representations and not upon representations of the defendant principal. Under these circumstances, the forecast of plaintiff's evidence indicates that plaintiff cannot establish that Mr. Ritchie had actual authority to admit her as a regular degree student, nor did he have apparent authority to do so upon which any reasonably prudent person could rely without further investigation.

We have carefully examined plaintiff's other arguments and find them to be without merit. In conclusion, we hold that when plaintiff's evidentiary forecast is examined, it reveals merely that plaintiff believed that she had become a regular degree candidate and there was never any mutual assent to an agreement between plaintiff and any agent of the defendant University with the authority to admit her into the degree program. Therefore, summary judgment in defendant's favor was properly entered.

Affirmed.

Chief Judge VAUGHN and Judge WELLS concur.