JACK S. GRAY AND MARY B. GRAY T/A TOWER CIRCLE MOTEL, PLAINTIFFS V. NORTH CAROLINA INSURANCE UNDERWRITING ASSOCIATION, DEFENDANT

No. COA97-1321

(Filed 19 January 1999)

**1. Appeal and Error— appealability—instructions—no objection or exception**

An assignment of error in the appeal of an insurance action to instructions on the correct measure of damages was overruled where no objection or exception was taken when counsel was given the opportunity, defendant did not move at the conclusion of the evidence for a directed verdict on this issue, and defendant did not make the argument a part of his motion for judgment n.o.v.

**2. Insurance— unfair or deceptive trade practices—pattern of conduct**

The trial court erred in an action arising from an insurance claim following a hurricane by denying defendant's motion for a directed verdict on the issues of unfair or deceptive trade practices based on violation of N.C.G.S. § 58-63-15(11) and by awarding treble damages and attorneys' fees based on violation of Chapters 58 and 75. There was insufficient evidence from which a reasonable jury could find that any of the acts of defendant were done with such frequency as to indicate a "general business practice" as required for an unfair and deceptive practice under N.C.G.S. § 58-63-11(a). Moreover, a mere breach of contract, even if intentional, is not sufficiently unfair and deceptive to sustain an action under N.C.G.S. § 75-1.1 and it could not be said in this case that the trial court abused its discretion in failing to find that defendant violated the provisions of N.C.G.S. § 75-1.1 separate and apart from any violation of N.C.G.S. § 58-63-15(11).

**3. Declaratory Judgments— insurance claims—mortgage holder—not a party to action**

There was harmless error in an action arising from an insurance claim after a hurricane where the trial court submitted to the jury the issue of whether anyone else, particularly Mrs. Gray (an alleged mortgage holder), was entitled to proceeds under the insurance policy where Mrs. Gray appeared neither personally nor by counsel, was not served with process nor made a party,

and certainly is not bound by the judgment of the trial court in this case.

Appeal by defendant and cross-appeal by plaintiffs from amended judgment entered 22 April 1997 by Judge J. Richard Parker in Dare County Superior Court. Heard in the Court of Appeals 17 August 1998.

*Vandeventer, Black, Meredith & Martin, L.L.P., by Norman W. Shearin, Jr., for plaintiff appellants.*

*Cranfill, Sumner & Hartzog, L.L.P., by William W. Pollock, for defendant appellant.*

HORTON, Judge.

On 31 August 1993, plaintiffs Jack S. Gray and Mary B. Gray (the Grays) traded as the Tower Circle Motel (the Motel). On that day, Hurricane Emily struck the Outer Banks and the Motel suffered wind damage. Insurance coverage for the Motel property was provided by an insurance policy issued by defendant North Carolina Underwriting Insurance Association to "Jack S. & Mary L. Gray T/A Tower Circle Motel." The policy provided coverage to the real property against wind and hail damage only. On 1 September 1993, the Grays filed a claim with defendant for "extensive wind damage."

During the adjustment process, defendant received a copy of a deed of trust from an attorney for Georgia B. Gray. Georgia Gray's late husband was the brother of plaintiff Jack S. Gray. The attorney advised defendant that Georgia B. Gray held a note and deed of trust on the Motel property and that plaintiffs were required, by the terms of that deed of trust, to obtain insurance on the Motel property for the benefit of Georgia B. Gray.

Plaintiffs requested a cash advance during the adjustment process. In accordance with its long-standing policy and on advice of counsel, defendant issued a joint check on 21 October 1993 in the amount of $25,000.00 to plaintiffs and Georgia B. Gray as an advance. Plaintiffs returned the check to defendant.

Defendant hired an adjuster to investigate plaintiffs' wind loss. The adjuster concluded that wind damage to the Motel property exceeded the policy limits. After a review of the adjuster's report and photographic evidence, defendant felt much of the damage to the motel property was due to flooding rather than wind. Defendant hired

a second adjuster to investigate the loss. After consultation with a contractor, the second adjuster determined that the amount of damage to the motel property caused by wind was $60,821.51.

Plaintiffs' attorney informed defendant that they were dissatisfied with defendant's determination of damages, had retained their own engineer and contractor to inspect the property, and requested that they be allowed to submit their own reports to defendant for its consideration. Defendant agreed to consider any additional information submitted by plaintiffs. On several occasions, defendant requested the additional information from plaintiffs, but defendant received no additional information until the commencement of this action on 13 July 1994 in Dare County Superior Court.

Plaintiffs alleged that defendant's actions during the adjustment of the claim breached the insurance policy and also constituted unfair and deceptive trade practices. Plaintiffs also sought a declaratory judgment that they were entitled to receive any proceeds under the policy free of any interest the mortgage holder might have.

On 19 December 1996, a jury found that defendant had breached the policy of insurance; that plaintiffs had been injured by the breach in the amount of $256,256.91; that defendant had done one of five enumerated acts with regards to the claim under the policy, and had done so with such frequency as to indicate a general business practice; that plaintiffs were injured as a result of the business practice in the amount of $117,000.00; and plaintiffs were entitled to the proceeds of the policy free of the claim of any other person. In its amended judgment, the trial court trebled the award of $117,000.00 to $351,000.00, awarded prejudgment interest on all sums awarded, and taxed costs to defendant, including attorneys' fees in the sum of $117,000.00. Defendant appealed. Plaintiffs cross-appealed, contending the trial court should have trebled all damages awarded to plaintiffs and should have awarded attorneys' fees based on the total of all damages awarded by the jury.

The primary questions presented for decision by this Court are: (I) whether the trial court correctly charged the jury on the measure of damages for the loss of personal property; (II) whether plaintiffs introduced sufficient evidence of frequent willful acts by defendant which would support plaintiffs' claim for unfair and deceptive trade practices under Chapters 75 and 58 of the North Carolina General Statutes; and (III) whether the declaratory judgment claim was properly submitted to the jury.

### . I. Breach of Contract Claim

**[1]** Plaintiffs alleged that the Motel real property and some personal property suffered wind-related damage from Hurricane Emily, and that defendant breached the policy of insurance by refusing to pay for such damages. The jury answered the breach of contract issue in the affirmative, and answered the damages issue resulting from that breach in the sum of $256,256.91. According to plaintiffs, that amount of damages is made up by adding "$247,973.76, representing the Crittenden assessment of covered loss to the structures damaged by the winds of Hurricane Emily and $8,283.15 in covered loss to personal property ($8,783.35 less $500.00 deductible)."

Defendant contends the claim for loss of personal property should not have been submitted to the jury since plaintiffs did not introduce evidence of the value of the personal property immediately prior to, and immediately after, the wind damage caused by the hurricane. Defendant's assignment of error states that the trial court erred in instructing the jury on the correct measure of damages. Although defendant now complains about the trial court's jury instructions on this issue, no objection or exception was taken to the trial court's instructions in this area following the charge to the jury when the trial court gave counsel an opportunity to do so. "By failing to call the trial court's attention to alleged errors in the jury charge, plaintiff has waived his right to appellate review." *Donavant v. Hudspeth*, 318 N.C. 1, 29, 347 S.E.2d 797, 814 (1986).

Further, we note that defendant did not move at the conclusion of the evidence for a directed verdict on this issue, nor did he make the argument as a part of his motion for judgment notwithstanding the verdict. Consequently, this assignment of error is overruled.

**[2]**     **II. Unfair or Deceptive Trade Practices Claim**

N.C. Gen. Stat. § 75-1.1 (1994) provides in part:

(a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

(b) For purposes of this section, "commerce" includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession.

GRAY v. N.C. INS. UNDERWRITING ASS'N

[132 N.C. App. 63 (1999)]

N.C. Gen. Stat. § 75-16 (1994) provides:

> If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.

Thus, N.C. Gen. Stat. § 75-16 allows a private cause of action for violation of N.C. Gen. Stat. § 75-1.1, and mandates the imposition of treble damages. *Marshall v. Miller*, 302 N.C. 539, 543, 276 S.E.2d 397, 400 (1981).

Unfair trade practices in the insurance business are regulated by the provisions of N.C. Gen. Stat. § 58-63 (1994 and Cum. Supp. 1997) (Unfair Trade Practices Act). The Unfair Trade Practices Act prohibits anyone from engaging "in any trade practice which is defined in this Article as or determined pursuant to this Article to be . . . an unfair or deceptive act or practice in the business of insurance." N.C. Gen. Stat. § 58-63-10 (1994). The Act then sets out a listing of actions which are "defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance[.]" N.C. Gen. Stat. § 58-63-15 (1994).

N.C. Gen. Stat. § 58-63-15(11), which is entitled "Unfair Claim Settlement Practices," sets out, in fourteen subsections, various acts which constitute unfair trade practices when committed with "such frequency as to indicate a general business practice . . . ." *Id.* "The relationship between the insurance statute and the more general unfair or deceptive trade practices statutes is that the latter provide a remedy in the nature of a private action for the former." *Kron Medical Corp. v. Collier Cobb & Associates*, 107 N.C. App. 331, 335, 420 S.E.2d 192, 194, *disc. review denied*, 333 N.C. 168, 424 S.E.2d 910 (1992). As a matter of law, a violation of N.C. Gen. Stat. § 58-63-15 is an unfair or deceptive trade practice in violation of N.C. Gen. Stat. § 75-1.1. *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 470, 343 S.E.2d 174, 179 (1986) (construing N.C. Gen. Stat. § 58-54.4, the predecessor to N.C. Gen. Stat. § 58-63-15).

In the case *sub judice*, plaintiffs contend defendant violated the following sections of N.C. Gen. Stat. § 58-63-15(11):

b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

. . . .

f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

. . . .

h. Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled;

. . . .

l. Delaying the investigation or payment of claims by requiring an insured claimant . . . to submit a preliminary claim report and then requiring the subsequent submission of formal proof-of-loss forms, both of which submissions contain substantially the same information;

m. Failing to promptly settle claims where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage[.]

In Issue Three, the jury was asked to determine whether defendant did at least one of the five prohibited acts, and the jury answered in the affirmative. Issue Four then asked the jury to determine whether defendant did one or more of the above-stated acts with such frequency as to indicate a general business practice. Again, the jury answered in the affirmative. The jury then found in Issue Five that plaintiffs were injured as a proximate result of the conduct of defendant, and assessed damages of $117,000.00 in Issue Six.

Defendant contends there is insufficient evidence to show it violated the provisions of N.C. Gen. Stat. § 58-63-15(11)(b,f,h,l and m), and that the trial court erred in submitting Issues Three, Four, Five, and Six, which relate to the unfair or deceptive trade practices claim. We note that in order to state a claim for an unfair and deceptive practice under N.C. Gen. Stat. § 58-63-11(a), plaintiff must allege that defendant insurance company engaged in the prohibited practices with such frequency as to indicate that the acts are a "general busi-

ness practice" of defendant. *Von Hagel v. Blue Cross & Blue Shield*, 91 N.C. App. 58, 60, 370 S.E.2d 695, 698 (1988). Here there are no such allegations in plaintiff's complaint. Assuming, without deciding, that there was sufficient evidence in this case of a violation of N.C. Gen. Stat. § 58-63-15(11) to warrant submission of Issue Three to the jury, we find that there was insufficient evidence from which a reasonable jury could find that any of the acts of defendant were done with such frequency as to indicate a "general business practice."

"General" is defined as "[b]eing usually the case; true or applicable in most instances but not all." The American Heritage Dictionary 552, (2d ed. 1982). The same dictionary defines "frequent" as "[o]ccurring or appearing quite often or at close intervals[.]" *Id.* at 534. We also find clarification of the "frequency" and "general business practice" requirements in earlier decisions of this Court. In *Miller v. Nationwide Mutual Ins. Co.*, 112 N.C. App. 295, 303, 435 S.E.2d 537, 543 (1993), *disc. review denied*, 335 N.C. 770, 442 S.E.2d 519 (1994), plaintiff alleged that defendant insurance company " 'has adopted a policy and practice in the handling of its first-party insured UIM claims to uniformly contest, and refuse to pay UIM claims which involve "stacking" of UIM coverages.' " We held that the allegation of such a general policy and practice was "sufficient to comport with the requirement of G.S. 58-63-15(11) that plaintiff allege that defendant violated the prohibited acts 'with such frequency as to indicate a general business practice.' " *Id.* In *Lovell v. Nationwide Mut. Ins. Co.*, 108 N.C. App. 416, 422, 424 S.E.2d 181, 185, *disc. review allowed*, 333 N.C. 539, 429 S.E.2d 558, *aff'd*, 334 N.C. 682, 435 S.E.2d 71 (1993), plaintiff alleged that defendant's actions amounted to "aggravated conduct." One action complained of by plaintiff Lovell was that defendant linked the med pay claim and the liability claim, stating that it wanted to settle all claims at once. *Id.* at 423, 424 S.E.2d at 186. We agreed that such an allegation indicated aggravated conduct, and also referred to such action as a violation of N.C. Gen. Stat. § 58-63-15(11)(m), pointing out that

"[f]ailure to promptly settle claims where liability has become reasonably clear, under one portion of the insurance coverage in order to influence settlement under other portions of the insurance policy coverage" is an unfair claim settlement practice; however, such a violation . . . *must be performed often enough to constitute a general business practice[]*.

*Lovell*, 108 N.C. App. at 423, 424 S.E.2d at 186 (emphasis added).

GRAY v. N.C. INS. UNDERWRITING ASS'N

[132 N.C. App. 63 (1999)]

In support of its contention that the actions of defendant were its general, or typical, business practices, plaintiffs introduced evidence of only one other instance in which plaintiffs contended that defendant violated the provisions of N.C. Gen. Stat. § 58-63-15(11). The property of Islander Condominium Association (Islander) was also damaged by Hurricane Emily. As in the case *sub judice*, the Islander property was insured by defendant, initially adjusted by Crittenden, and later by Cutler. The case with Islander was settled on 1 March 1994 for $595,199.10. In the Islander claim, as in the present case, there was no coverage for loss of rental profits, and plaintiffs claim that, in both cases, defendant showed a lack of concern about the loss of rental profits by both claimants. No lawsuit was filed in the Islander loss.

Although defendant settled many other claims for damage arising from Hurricane Emily, plaintiffs contend the only two commercial claims were their claim and the Islander claim. We note that in the Islander claim there was a disagreement and negotiations over the amount of damages, but the Islander claim was paid in full within six months of the loss without the necessity of a lawsuit being filed. Even assuming *arguendo* that there were violations of N.C. Gen. Stat. § 58-63-15(11) by defendant in its adjustment of the Islander claim, we conclude that this evidence is insufficient to show a pattern of conduct by defendant which would amount to a *per se* violation of the Unfair Claim Practices Act.

We are cognizant of this Court's decision in *Murray v. Nationwide Mutual Ins. Co.*, 123 N.C. App. 1, 472 S.E.2d 358 (1996), *disc. reviews denied*, 345 N.C. 344, 483 S.E.2d 172-73 (1997), but have concluded that it is factually distinguishable and does not mandate a different result. In *Murray*, plaintiff was injured in an automobile accident in January 1986, and obtained a judgment against the negligent driver for $85,000.00 in 1990. *Id.* at 4, 472 S.E.2d at 359. Insurance coverage was provided by three separate policies. *Id.* After repeated attempts to collect the full amount of his judgment, interest, and costs, plaintiff Murray brought an action against the three defendant insurance companies in 1992 for unfair and deceptive trade practices, and against one defendant insurer for punitive damages arising from the company's alleged tortious breach of contract. *Id.* at 5, 472 S.E.2d at 360. Plaintiff Murray alleged five separate violations of N.C. Gen. Stat. § 58-63-15(11) and alleged "numerous demands" on defendant insurers over the course of the protracted litigation. *Id.* at 10-11, 472 S.E.2d at 363. The trial court entered *summary judgment for the*

defendants, and Murray appealed to this Court. *Id.* at 7, 472 S.E.2d at 361. We reversed the decision of the trial court, holding in pertinent part that plaintiff Murray's allegations of repeated violations of N.C. Gen. Stat. § 58-63-15(11), "along with the case-specific facts alleged and verified in the complaint, when viewed in the light most favorable to plaintiff, and when viewed against the composition of the judgments already rendered against defendants in this case, indicate plaintiff has made out his *prima facie* case of a § 58-63-15(11) violation." *Id.* at 11, 472 S.E.2d at 363. We decline to extend the reasoning of *Murray* to the facts of this case.

After the trial court signed the original judgment in this matter on 24 March 1997, plaintiffs moved that the trial court amend its judgment by, among other things, adding a finding that defendant "willfully engaged in unfair and/or deceptive acts or practices affecting commerce in North Carolina in violation of N.C.G.S. § 75-1.1." On 22 April 1997, the trial court entered an amended judgment which granted much of plaintiffs' motion to amend, but did not make any separate determination that defendant's conduct amounted to a violation of N.C. Gen. Stat. § 75-1.1. The determination of whether an act or practice is unfair or deceptive within the meaning of N.C. Gen. Stat. § 75-1.1 is a question of law for the Court. *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 664, 370 S.E.2d 375, 389 (1988). In *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981), our Supreme Court noted that "[a] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."

However, it is well recognized that actions for unfair or deceptive trade practices are distinct from actions for breach of contract. *Lapierre v. Samco Dev. Corp.*, 103 N.C. App. 551, 559, 406 S.E.2d 646, 650 (1991). A mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C. Gen. Stat. § 75-1.1. *Branch Banking and Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700, *disc. review denied*, 332 N.C. 482, 421 S.E.2d 350 (1992). Substantial aggravating circumstances attendant to the breach must be shown. *Id.*

In this case, we cannot say the trial court abused its discretion in failing to find that defendant violated the provisions of N.C. Gen. Stat. § 75-1.1, separate and apart from any violation of N.C. Gen. Stat. § 58-63-15(11). Thus, plaintiff's cross-assignment of error is overruled.

The issues of unfair or deceptive trade practices based on a violation of N.C. Gen. Stat. § 58-63-15(11) should not have been submitted to the jury. Defendant's motion for a directed verdict on that claim should have been granted, and the action of the trial court in denying its motion and submitting the claim must be reversed. In addition, the award of treble damages and attorneys' fees based on a violation of Chapters 58 and 75 was erroneous.

## III. Declaratory Judgment Claim

[3] An underlying current driving this lawsuit is the family disagreement between plaintiffs and Georgia Gray, widow of the male plaintiff's deceased brother. When plaintiffs purchased the Motel from the brother, a note was given for the purchase price. That note was secured by a mortgage on the property. At the time of the loss involved herein, the brother was deceased, leaving Georgia as his sole heir. There is some indication in the record that the brother died testate, but there is no will as an exhibit.

Early in the claim adjustment process, defendant was notified there was a mortgage on the property, the mortgage required the mortgagor to maintain insurance on the Motel property, and Georgia Gray was entitled to funds which were secured by the mortgage. Plaintiffs contend they had paid all funds due to decedent, and that the mortgage was never canceled. On the advice of counsel, defendant placed Georgia Gray's name as a payee on the $25,000.00 check issued to plaintiffs, and plaintiffs rejected the check for that reason.

When plaintiffs instituted this action against defendant, they also brought a separate action against Georgia Gray to resolve the controversy about her claim against them. Plaintiffs did not make Georgia Gray or the representative of decedent's estate a party to the instant case. However, they sought a declaration from the trial court that no one else, particularly Mrs. Gray, was entitled to proceeds under the insurance policy issued by defendant. Georgia Gray appeared neither personally nor by counsel, was not served with process nor made a party, and certainly is not bound by the judgment of the trial court in this case.

Further, while we note that defendant does not complain about the action of the trial court in submitting the declaratory judgment issue to the jury, rather than deciding the issue as a matter of law, submission of the question to the jury required them to make a decision

on a question of law without adequate guidance given them by the jury instructions on the issue. The instructions provided that

> the plaintiffs must prove by the greater weight of the evidence that they are entitled to be paid the proceeds under the insurance policy free of any claim or interest of any party not entitled to receive payment under the insurance policy. Therefore, as to this issue, I charge that if you find the Grays have satisfied their burden of proof you will answer this issue yes, in favor of the plaintiffs.

Nor does the issue and its affirmative answer provide any guidance to defendant. Certainly no one would quarrel with the decision that plaintiffs should be entitled to receive policy proceeds free of the claim "of any party not entitled to receive payment under the insurance policy." That statement requires neither further argument nor citation of authority. Unfortunately, it does not assist the parties in the present situation, since Georgia Gray contends she is entitled to receive payment under the insurance policy. Gray is not bound by the judgment in this case for the reasons stated above.

We are not advised of the result of the separate action between plaintiffs and Georgia Gray, but may reasonably anticipate that the outcome of that lawsuit will dictate the answer to Georgia Gray's entitlement to any proceeds under the insurance policy involved here. Although we believe the actions of the trial court in submitting this issue to the jury were erroneous, we find the error was harmless since only the parties to this lawsuit are bound by the jury verdict on this issue and the judgment entered thereon.

In summary, there is no error in the judgment of the trial court awarding damages based on the breach of contract claim, but the judgment of the trial court awarding treble damages and attorneys' fees on the unfair and deceptive trade practice claim is erroneous and is reversed. We find no prejudicial error in the judgment of the trial court on the declaratory judgment claim.

No error in part, but reversed in part.

Chief Judge EAGLES concurs.

Judge MARTIN, Mark D., concurred in this opinion prior to 31 December 1998.