JACK K. MILLER, Plaintiff v. BILL and JULEE ROSE, Defendants

No. COA99-432

(Filed 5 July 2000)

## 1. Contracts— action for breach—no meeting of the minds

The trial court did not err by entering summary judgment in favor of defendants on a breach of contract claim in a case where a written instrument containing the exact terms of the parties' understanding was never executed, because viewing the evidence in the light most favorable to plaintiff reveals, at most, an understanding between the parties that should defendants obtain suitable financing for the pertinent beach condominium, the parties would enter into a partnership agreement in the future since: (1) the parties never had a concrete understanding or a meeting of the minds concerning the matter of financing; and (2) the financing issue was essential to the proposed deal in order to determine the amount of each party's financial responsibility.

MILLER v. ROSE

[138 N.C. App. 582 (2000)]

**2. Trusts— resulting—no binding agreement**

The trial court did not err by entering summary judgment in favor of defendants on plaintiff's claim that the pertinent beach condominium was subject to a parol resulting trust, because: (1) the parties did not have a binding agreement; and (2) none of plaintiff's money or assets were actually used in purchasing the property.

**3. Trusts— constructive—no position of trust or confidence**

The trial court did not err by entering summary judgment in favor of defendants on plaintiff's claim that the pertinent beach condominium was subject to a constructive trust, because there is no evidence that defendants acted fraudulently in their dealings with plaintiff or that they stood in a position of trust or confidence regarding plaintiff.

**4. Unfair Trade Practices— breach of contract—insufficient**

The trial court did not err by dismissing defendants' claim for unfair and deceptive trade practices based on plaintiff's alleged failure to keep his promise to assist defendants in purchasing a beach condominium because a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1(a).

Appeal by plaintiff from order entered 29 October 1998 and cross-appeal by defendants from order entered 6 November 1998 by Judge L. Todd Burke in Superior Court, Forsyth County. Heard in the Court of Appeals 12 January 2000.

*Smith and Combs, by Steven D. Smith, for plaintiff-appellant/cross-appellee.*

*McCall Doughton & Blancato, PLLC, by Thomas J. Doughton, for defendant-appellee/cross-appellant.*

TIMMONS-GOODSON, Judge.

Plaintiff, Jack K. Miller, appeals from an order of the trial court granting summary judgment to defendants, Bill and Julee Rose, on plaintiff's claims for breach of contract and creation of a parol resulting trust. Defendants cross-appeal from an order dismissing their counterclaim against plaintiff for unfair and deceptive trade practices. Based upon our examination of the record, we conclude that

the orders of summary judgment and dismissal were properly entered.

The evidence, taken in the light most favorable to plaintiff, tends to show the following facts: In or around January of 1996, plaintiff negotiated a "Reservation Agreement" with Winchester Land and Development Corporation, which had begun construction of a condominium complex known as "Sea Watch Plantation," located in Myrtle Beach, South Carolina. The Reservation Agreement entitled plaintiff to purchase condominium Unit #606 for a price of $224,900.00, provided that he deposit $5,000.000 into an escrow account with Anchor Bank. The reservation right was also contingent upon plaintiff executing a Purchase Contract for the unit within ten days of receiving said contract from the developer. After paying the $5,000.00 deposit to reserve the unit, plaintiff attempted to enlist a partner to join in the purchase of the property.

Plaintiff approached defendants about such an endeavor in or around August of 1996. Under the proposed arrangement, defendants would obtain financing to purchase the unit and would make the initial down payment. Defendants would thereupon hold legal title to the property. Then, in exchange for a 50% ownership interest, plaintiff would assume all monthly mortgage payments on the property and would be responsible for leasing and maintaining the condominium. Plaintiff would receive all rental income from the property and would apply that income toward the mortgage payments and the property's maintenance. In addition, plaintiff proposed that on some future date to be determined by the parties, the property would be sold and the proceeds divided equally between the parties. A written instrument containing the exact terms of the parties' understanding was never executed.

Shortly after negotiations between the parties began, plaintiff released his right to purchase Unit #606 and received a refund of his $5,000.00 deposit. Then, in September of 1996, defendants executed a contract to purchase the unit at a price of $224,900.00 and tendered a check in the amount of $22,490.00 as a down payment toward the purchase. Defendants sent a copy of the purchase agreement and the down payment check to plaintiff, with a note indicating what action they had taken toward purchasing the property. Defendants thereafter made several attempts to obtain financing for the remaining 90% of the purchase price, but were unsuccessful. Because plaintiff, who had been involved in other similar ventures, repeatedly assured defendants that such financing was available, defendants attempted

to contact him to inquire as to which lenders would finance 90%. When plaintiff failed to assist them in obtaining the desired financing, defendants became disenchanted with the proposed arrangement and decided not to consummate the deal. Defendants closed on the property in September of 1997 and have since paid all monthly mortgage installments, homeowners' dues, and property taxes.

On 20 October 1997, plaintiff filed a complaint alleging breach of contract and the existence of a parol trust with respect to Unit #606. Defendants answered and alleged counterclaims for breach of contract and unfair and deceptive trade practices. Plaintiff replied and filed a motion to dismiss defendants' counterclaims pursuant to Rule 12(b)(6) of the Rules of Civil Procedure. Defendants moved for summary judgment on the claims raised in plaintiff's complaint, and the court granted the motion by order dated 29 October 1998. Defendants voluntarily dismissed their claim for breach of contract, and on 6 November 1998, the trial court dismissed their claim for unfair and deceptive trade practices pursuant to Rule 12(b)(6) of the Rules of Civil Procedure. From the order of summary judgment in favor of defendants, plaintiff appeals. Defendants cross-appeal from the order dismissing their claim for unfair and deceptive trade practices.

## Plaintiff's Appeal

[1] Plaintiff's initial argument is that the trial court erred by entering summary judgment for defendants on plaintiff's claim for breach of contract. Plaintiff contends that the evidence, when considered in his favor, raised genuine and material issues of fact as to whether a partnership agreement existed between the parties. We cannot agree.

The purpose of summary judgment is to dispense with formal trials in cases where only legal issues remain "by permitting penetration of an unfounded claim or defense in advance of trial and allowing summary disposition for either party when a fatal weakness in the claim or defense is exposed." *Elliott v. Duke University, Inc.*, 66 N.C. App. 590, 592, 311 S.E.2d 632, 634 (1984). On appeal from an order granting summary judgment, this Court must decide whether, on the basis of the pleadings, depositions, and other evidentiary materials presented to the trial court, there is any genuine issue of material fact and whether the claim in question may be resolved as a matter of law. *Stephenson v. Warren*, 136 N.C. App. 768, 771-72, 525 S.E.2d 809, 811 (2000). The burden on the moving party to show that no genuine issues of fact exist may be met "by proving that an essential element

of the opposing party's claim is nonexistent or by showing through discovery that the opposing party cannot produce enough evidence to support an essential element of his claim." *Elliott*, 66 N.C. App. at 592, 311 S.E.2d at 634. Once this burden has been satisfied, "the burden shifts to the non-moving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, establishing at least a prima facie case at trial." *Stephenson*, 136 N.C. App. at 772, 525 S.E.2d at 812.

Plaintiff argues that the parties entered into an oral partnership agreement or joint venture to purchase condominium Unit #606 for the purposes of leasing it to short-term occupants and selling it, at some future date, for a profit to be divided between the parties. Citing our Supreme Court's decision in *Potter v. Homestead Preservation Assoc.*, 330 N.C. 569, 412 S.E.2d 1 (1992), plaintiff maintains that the conduct of the parties is demonstrative of a valid partnership agreement and that such an agreement is not within the Statute of Frauds.

The plaintiff in *Potter* presented evidence tending to show that she held an option to buy two parcels of land and that she entered into an oral agreement with the defendants to develop the land on a partnership basis. Under the agreement, one partner "was to provide capital," another partner "was to handle the 'legal part,' " and the plaintiff and yet another partner "were to market lots or 'memberships." *Id.* at 572, 412 S.E.2d at 3. "Each partner was to own one-fourth interest in the property and profits from sales." *Id.* The defendants' holding company purchased the properties pursuant to the agreement and thereafter sold them for substantial profits. The plaintiff, however, did not receive a one-fourth share of the profits and brought an action against the defendants for breach of the partnership agreement.

Concluding that the trial court erred in directing a verdict for the defendants on the plaintiff's breach of contract claim, our Supreme Court noted the following:

"A partnership may be formed by an oral agreement." Even without proof of an express agreement to form a partnership, a voluntary association of partners may be shown by their conduct. A finding that a partnership exists "may be based upon a rational consideration of the acts and declarations of the parties, warranting the inference that the parties understood that they were partners and acted as such." "[A] course of dealing between the

parties of sufficient significance and duration . . . along with other proof of the fact [may] be admitted as evidence tending to establish the fact of partnership, provided it has sufficient substance and definiteness to evince the essentials of the legal concept, including, of course, the necessary intent."

*Id.* at 576-77, 412 S.E.2d at 5-6 (citations omitted) (alterations in original). The Court determined that the plaintiff presented sufficient evidence of the formation and terms of the partnership agreement to raise a question of fact as to whether such an agreement existed. The Court further concluded that the absence of a writing was not fatal to the plaintiff's breach of contract claim:

A partner's interest in partnership assets—including real property—is a personal property interest. As such, it is not subject to the statute of frauds. "[T]he general rule supported by the great preponderance of the authorities on the subject is that a parol partnership agreement or joint enterprise entered into by two or more persons for the express purpose of carrying on the business of purchasing and selling real estate, or interests therein, for speculation, the profits to be divided among the parties, is not within the statute of frauds relating to the sale of land or an interest in lands. In other words, such an agreement may be entered into, become effectual, and be enforced although not in writing."

*Id.* at 577, 412 S.E.2d at 6 (citations omitted) (alteration in original). While the *Potter* decision is instructive, it is not dispositive of the case before us, because plaintiff's evidence, unlike that presented in *Potter*, does not establish an agreement of sufficient definiteness to be legally enforceable.

"It is a well-settled principle of contract law that a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." *Northington v. Michelotti*, 121 N.C. App. 180, 184, 464 S.E.2d 711, 714 (1995). Regarding mutual assent, we have said that " '[t]here must be neither doubt nor difference between the parties. They must assent to the same thing in the same sense and their minds must meet as to *all* the terms. If *any* portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement.' " *MCB Limited v. McGowan*, 86 N.C. App. 607, 608-09, 359 S.E.2d 50, 51 (1987) (quoting *Croom v. Lumber Co.*, 182 N.C. 217, 220, 108 S.E. 735, 737 (1921) (emphasis added)). To be enforceable, the terms of a contract must

be sufficiently definite and certain, *Brooks v. Hackney*, 329 N.C. 166, 170, 404 S.E.2d 854, 857 (1991), and a contract that " 'leav[es] material portions open for future agreement is nugatory and void for indefiniteness,' " *MCB Limited*, 86 N.C. App. at 609, 359 S.E.2d at 51 (quoting *Boyce v. McMahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974)). Therefore, when the plaintiff's forecast of evidence shows that the parties never reached a meeting of the minds as to the essential terms of the agreement, summary judgment in favor of the defendants is proper. *Elliott*, 66 N.C. App. at 596, 311 S.E.2d at 636.

Viewed in the light most favorable to plaintiff, the evidence establishes, at best, an understanding between the parties that should defendants obtain suitable financing, the parties would enter into a partnership agreement in the future. In his letter to defendants upon learning of their decision not to go forward with the deal, plaintiff wrote the following:

> The status of our agreement remains the same as presented to you and accepted by you some months ago (August of 1996). We still believe that we need to know the financing terms that you can secure before we work out the exact terms of this agreement. However, our general agreement remains that if you can secure ninety percent financing, then (in exchange for half the appreciation and credit for half of the principle payments), we agree to lease the unit from you at a rate that will pay 100% of the ongoing ownership costs and to fully pay the remaining principle over the next twenty years. Furthermore if you choose to purchase the unit with eighty percent financing then we agree to pay for the unit in only fifteen years or to pay you a deposit of up to $5,000.00 with some adjustment to the payment terms.

Regarding the issue of financing, plaintiff testified as follows:

> Q: Okay. And with respect to your deal, you had no specific agreement as to what type of financing they had to be able to obtain?
>
> A: Absolutely none. Well, they—we—there was a lot of talk about the financing, and there was a clear understanding about the financing.
>
> Q: So it didn't matter whether they got, you know, a thirty-year loan, a fifteen-year loan or a five-year loan? Whatever financing they got didn't matter?

A: They were—there was—if the financing changed over what— it was different than what—you know, normal commercial—what we would expect they might be able to get—then there would be the willingness on my part to renegotiate to some extent . . . .

Q: Okay. So you all didn't have a specific agreement as far as what the terms of the financing would be with respect to the number of years that it had to be financed or the interest rate that he had to be able to obtain or the down payment he was going to have to make; is that correct?

A: We both knew what kind of financing was available at the time. We both knew that, but we were not sure as to whether they—that we would be able to get it with the ten percent down— is really what it boils down to. . . . If it turns out to be some different financing, then I would be willing to look at that and perhaps concede some money on my part because we had made it clear up front a long time ago that I'm not going to put any money in. . . .

Q: Was there an agreement as to what type of interest rate the Roses had to be able to obtain?

A: No; none whatsoever.

Q: So if the bank was willing to make the Roses a loan at eighteen percent, you—are you saying they had to go through with the deal?

A: I'm not saying that I wouldn't have been willing, possibly, to say, "Well, you know, things have changed or something if it's that kind of high interest rate or something." But the Roses accepted that. They accepted that risk. . . . That was his problem—not mine—as to what the interest rate was going to be.

. . . .

Q: And if he got a one-year loan, that was fine?

A: The—

Q: And you were going to make all the payments on it?

A: Our deal said that. Now, I guess I would have been stuck big time if he had gone out and done that and I would have had to pay it off in a year or something . . . .

Q: So there was no agreement as far as how much or any type of cap on the amount of payments that you would have to make on a monthly basis.

A: No. No. We didn't actually discuss a cap of some kind of monthly payment; no.

Q: And, of course, you left open when you were going to sell the property in the future; correct?

A: That's true.

Despite plaintiff's claims to the contrary, it is evident from his deposition testimony that the parties never had a concrete understanding, or a meeting of the minds, concerning the matter of financing. The parties did not delineate what was acceptable in terms of the interest rate on the loan, the duration of the loan, or the percentage of the purchase price financed. The financing issue was essential to the proposed deal, because it would ultimately determine the amount of each party's financial responsibility, i.e., the amount of defendants' down payment and the amount of plaintiff's monthly payments. Failing to specify the financing particulars was, therefore, fatal to the formation of a binding agreement. Since there was no valid partnership agreement between the parties, summary judgment for defendants on plaintiff's breach of contract claim was entirely appropriate.

[2] Plaintiff argues next that he presented a sufficient evidentiary forecast to survive defendants' motion for summary judgment on plaintiff's claim that Unit #606 was subject to a parol resulting trust. Again, we must disagree.

In North Carolina, a resulting trust is created by operation of law:

> A resulting trust arises "when a person becomes invested with the title to real property under circumstances which in equity obligate him to hold the title and to exercise his ownership for the benefit of another. . . . A trust of this sort does not arise from or depend on any agreement between the parties. It results from the fact that one man's money has been invested in land and the conveyance taken in the name of another."

*Patterson v. Strickland*, 133 N.C. App. 510, 519, 515 S.E.2d 915, 920 (1999) (quoting *Mims v. Mims*, 305 N.C. 41, 46, 286 S.E.2d 779, 783

(1982) (citation omitted)). As a general rule, " 'the trust is created, if at all, in the same transaction in which the legal title passes, and by virtue of the consideration advanced before or at the time the legal title passes.' " *Mims*, 305 N.C. at 47, 286 S.E.2d at 784 (quoting *Cline v. Cline*, 297 N.C. 336, 344, 255 S.E.2d 399, 404-05 (1979)). An enforceable promise to pay money toward the purchase price made prior to title passing, and subsequent payment made pursuant to that promise, may serve as adequate consideration to support a resulting trust. *Cline*, 297 N.C. at 346, 255 S.E.2d at 406. However, in such a case, a valid agreement must exist between the grantee and the professed trust beneficiary, *see Anderson v. Anderson*, 101 N.C. App. 682, 685, 400 S.E.2d 764, 766 (1989) (stating that where plaintiff claimed resulting trust based on promise to pay, trial court was correct in considering whether valid agreement existed), and "[the alleged beneficiary's] money must have actually been used toward the purchase of the property," *Patterson*, 133 N.C. App. at 519, 515 S.E.2d at 921. Moreover, the party seeking to establish a trust has the burden of proving its existence "by clear, strong, and convincing evidence." *Keistler v. Keistler*, 135 N.C. App. 767, 769, 522 S.E.2d 338, 340 (1999).

In the instant case, the evidence is undisputed that the initial down payment, the closing costs, and all monthly payments on the property were made by or on behalf of defendants. While it is true that plaintiff originally paid $5,000.00 to reserve the unit, those funds were later refunded to plaintiff and were not applied toward the purchase of the property. Thus, given our conclusion that the parties did not have a binding agreement, and given that none of plaintiff's money or assets were actually used in purchasing the property, a resulting trust with respect to Unit #606 did not arise.

[3] As to plaintiff's contention that he presented sufficient evidence of a constructive trust, we note that such a trust " 'arises when one obtains the legal title to property in violation of a duty he owes to another.' " *Id.* at 510, 515 S.E.2d at 921 (quoting *Fulp v. Fulp*, 264 N.C. 20, 22, 140 S.E.2d 708, 711 (1965)). " 'Constructive trusts ordinarily arise from actual or presumptive fraud and usually involve the breach of a confidential relationship.' " *Id.* (quoting *Fulp*, 264 N.C. at 22, 140 S.E.2d at 711). The record is devoid of any evidence that defendants acted fraudulently in their dealings with plaintiff or that they stood in a position of trust or confidence regarding plaintiff. This argument then must fail, and summary judgment for defendants was properly entered.

Defendants' Appeal

**[4]** By their appeal, defendants argue that the trial court erred in dismissing their claim for unfair and deceptive trade practices pursuant to Rule 12(b)(6) of the Rules of Civil Procedure. We disagree.

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted challenges the legal sufficiency of the pleading. *Kane Plaza Associates v. Chadwick*, 126 N.C. App. 661, 486 S.E.2d 465 (1997). Dismissal is warranted when, among other things, the face of the pleading reveals that some fact essential to the claim is absent. *Peterkin v. Columbus County Bd. of Educ.*, 126 N.C. App. 826, 828, 486 S.E.2d 733, 735 (1997). In ruling on a Rule 12(b)(6) motion to dismiss, the trial court regards all factual allegations of the complaint as true. *Kane Plaza*, 126 N.C. App. at 664, 486 S.E.2d at 467. Legal conclusions, however, are not entitled to a presumption of truth. *Peterkin*, 126 N.C. App. at 828, 486 S.E.2d at 735.

Under section 75-1.1(a) of our General Statutes, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a) (1999). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). A deceptive practice is one that " 'possesse[s] the tendency or capacity to mislead, or create[s] the likelihood of deception.' " *Poor v. Hill*, 138 N.C. App. 19, 28-29, 530 S.E.2d 838, 845 (2000) (quoting *Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 453, 279 S.E.2d 1, 7 (1981)). Nevertheless, "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [section 75-1.1 of the General Statutes]." *Gray v. N.C. Ins. Underwriting Assoc'n*, 132 N.C. App. 63, 71, 510 S.E.2d 396, 401 (1999). "Substantial aggravating circumstances attendant to the breach must be shown." *Id.*

In their action for unfair and deceptive trade practices, defendants allege that plaintiff promised to assist them in purchasing a condominium at Sea Watch Plantation. According to defendants, plaintiff assured them that they "would be able to purchase the condominium by paying only ten percent (10%) down and receiving ninety percent (90%) financing." Defendants contend that plaintiff further promised that if they "were unable to obtain 90% financing, he would pay the

additional 10% down plus one-half the closing cost . . ." Defendants aver that when it became clear that they would be able to obtain only 80% financing, plaintiff refused to pay 10% of the down payment or help them to obtain the 90% financing.

Defendants' claim, at most, is a simple breach of contract, as they have failed to allege any substantially aggravating circumstances which would give rise to an unfair or deceptive practices claim. Consequently, the trial court committed no error by dismissing the claim under Rule 12(b)(6).

In sum, we hold that the pleadings, depositions, and other evidence of record failed to demonstrate a triable issue of fact with respect to plaintiff's breach of contract or parol trust claims. Additionally, we hold that defendants' counterclaim for unfair and deceptive trade practices was insufficiently plead. For these reasons, the order of summary judgment and the order of dismissal are

Affirmed.

Judges MARTIN and HORTON concur.